VanDyke *vs.* Martin *et al.*

M. H. VANDYKE, plaintiff in error, *vs.* B. A. MARTIN *et al.*, defendants in error.

1. Where several forty acre tracts of land were levied on and sold separately by the sheriff, all for less than the amount of the execution :
*Held,* that as each lot was sold separately, the question of an excessive levy and sale did not arise.

2. Where several lots of land are levied on by the sheriff under a valid execution, and are duly advertised, as the law provides, and are duly sold to the highest bidder, at the proper time and place, and in the mode prescribed by law, without any fraud or extraordinary circumstances to keep people from the sale, the purchaser gets a good title, however inadequate the price.

3. Where a bill charges that purchasers at a sheriff's sale, combined with the sheriff and each other to deter persons from bidding at the sale, it is error in the judge to dismiss the bill for want of equity, although he may be well satisfied from the answer that the charge is untrue. He may, for this reason, refuse an injunction prayed for, but the issue made by the bill presents matter for a trial by the jury.

Injunction. Execution. Levy. ·Judicial sale. Before Judge KNIGHT. Lumpkin Superior Court. April Term, 1874.

This case was before this court at its last term : See 52 *Georgia Reports,* 56. An amendment was filed and a second application for injunction made.

M. H. VanDyke filed his bill against B. A. Martin; John A. Parker and William H. Satterfield, sheriff of Lumpkin county, making, in brief, the following case:

· An execution for $502 00 principal, and $57 00 interest, issued in favor of the defendant, Martin, against Benjamin F. Hamilton, as principal, and complainant, as security. At the time of the rendition of the judgment on which said execution was based, and thereafter, Hamilton was in possession of ample property from which the money could have been made, of which Martin had notice. The aforesaid sheriff, colluding with Martin to injure complainant, on April 28th, 1869, made a grossly excessive levy on a half interest in lots of land numbers eight hundred and twenty, eight hundred and sixty-one and nine hundred and thirty-one, and on the whole of

numbers eight hundred and fifty-nine, eight hundred and ninety and nine hundred and thirty-four, in the twelfth district and first section of Lumpkin county, each lot containing forty acres, more or less, which property was known as "Slover's Branch Gold Mines," the same being levied on as belonging to Hamilton. The lands embraced in this levy were, and are, of the value of $10,000 00. This property was advertised for sale in the "Mountain Signal," a paper published in the town of Dahlonega, in said county, having but a limited circulation. In pursuance of said advertisement, the sheriff, after having perpetrated a gross fraud upon complainant, as security, by making such an excessive levy, did sell said lands at public outcry to the defendants, Martin and Parker, for the inadequate sum of $66 00. The said defendants combined to prevent person from bidding and thus deter competition. Complainant insists that by reason of the above stated facts, he is discharged as security. Notwithstanding the fraud practiced upon complainant, the defendant, Martin, has caused the execution aforesaid, to be levied upon his property, and has had the same advertised to be sold. Prayer that proceedings under said levy be enjoined, and that said execution be decreed paid, so far as complainant is concerned, or that the property of Hamilton, sold as aforesaid, to defendants, Martin and Parker, be resold, complainant tendering the expenses, etc., of said previous sale.

The answers of the defendants are unnecessary to an understanding of the decision. They deny that the levy was excessive, and in support thereof show that each lot levied on, was sold separately, and did not approximate in the amounts for which they were respectively bid off, to the sum due on the execution. They claim to be purchasers in good faith, at a regular judicial sale, and ask to be protected. Deny all collusion, etc.

Several affidavits were introduced as to the value of the lands levied on. They are omitted as immaterial.

The chancellor refused the injunction and dismissed the bill, to which complainant excepted.

VanDyke *vs.* Martin *et al.*

WIER BOYD; JOHN A. WIMPY, for plaintiff in error.

W. P. PRICE, for defendants.

McCAY, Judge.

1. We see no error in the refusal of this injunction. Taking the bill and answers together, what equity the bill has, is in our judgment, completely sworn off. Even admitting the land sold to be of the value set up by the complainant, there is nothing in the charge of an excessive levy, since, as the answer shows, and as was the law, the lots were separately sold. Nor is the contrary charged in the bill. The mere *levy*, especially upon real estate, when there is no actual seizure, is a small matter. As the lands were not in a body, they were separately sold, and if the sale was otherwise valid, it seems to us immaterial how extensive was the levy and entry. The charge of tampering with and keeping away bidders is directly and positively denied. There is nothing left but the simple charge that the price was grossly inadequate. Is this sufficient? We think not.

2. This was neither a private sale, nor a sale by order of court. But a technical sheriff's sale, under ordinary process of execution. Without doubt a private sale may be for so grossly inadequate a price as to carry upon its very face an evidence of fraud and imposition. So, too, it may not be unusual, in sales made by masters or commissioners, under orders in chancery, when the sale is never treated as complete until the report of the matter has been acted upon by the court, to order a new sale when the price has been grossly inadequate, though even under such circumstances, the rule has not been uniform. But we have not found a case where a regular sheriff's sale, under ordinary process, has been set aside for simple inadequacy of price. Something more must appear—a want of due advertisement, some unusual circumstances, to keep away bidders, some fraud or management, to produce the result, etc. A sale under execution is a forced sale from its

very nature. But it is made by a public, sworn and bonded officer. The law fixes the time, place and manner of it, as well as the nature and extent of the notice of it, and it is to the highest bidder, and for cash. Such sales are often very hard upon defendants, but they are the stern result of the positive laws of the land. The law points out what shall be done. It takes wise and humane steps for full notice. It requires due advertisement. It establishes a fixed day and fixed hours for the sale. It provides a public place—the court-house door—and having done this, it, in our judgment, does and can do no more. If, after all the legal steps have been taken, the highest bid is still less than the true value, there is no help for it. As a matter of course, if there be fraud or trick, in which the purchaser participates, or of which he has notice, the sale is bad. There are cases, too, where, by accident of storm or flood, or other unusual occurrence, people have been kept away, in which the courts have interferred. But for mere inadequacy of price, so far as we know, there has not been interference. Nor is it proper that there should be any such interference. In the first place, it is the right of the creditor to sell, and if he has complied with the requirements of the law, it is unjust to him to interfere with the right, and it is the very highest public policy that these sales shall, when made in conformity to law, be binding. Who would bid at such a sale if his purchase were to be open to question for inadequacy of price? The true interest of defendants is against any such rule, since they could but suffer by the uncertainty it would beget. In this particular case, we think, too, that the inadequacy is badly made out. There seems to have been the usual number of persons present, and the very fact of the small price indicates what was the common opinion of the value. In all, there seems to have been but one hundred and eighty acres sold, and that in parcels, to-wit: the half of three lots and the whole of three lots, each lot being forty acres. As wild, unsettled mountain land, the price is not very low. The value insisted on is that value which the belief of the witness places on it, from the gold upon

it. How variable, uncertain and speculative is this dependence upon mere opinion, changing with each new test, and depending often upon the *fever* raging or not raging. Who has not known of many just such things; land of fabulous price to-day and worthless to-morrow, in high demand the third day, and a drug upon the market the fourth. But, as we have said, if the sale was fairly made, after proper and legal advertisement, at the time and place and in the manner fixed by law, the inadequacy of the price, though to be regretted, cannot be helped. We think, therefore, the court did right to refuse the injunction.

3. There is, however, a positive charge in the bill that the purchasers colluded with the sheriff to keep off bidders, and that, for this reason, the lands brought an inadequate price. True, this charge is positively denied by the answer, and the judge did right in refusing the injunction. But with this charge in the bill we do not think it demurrable. The truth of the charge was for a jury; the complainant may controvert the answers, and we think he has a right to go to a jury on the point. Whilst, therefore, we affirm the judgment refusing the injunction, we reverse the order dismissing the bill.