### HAMILTON v. ENGLAND.

1. Where by the terms of an instrument under seal, signed by two parties, an obligation is imposed upon one of them to make a conveyance of land to the other upon the performance of conditions set forth in the instrument, even though there be no express undertaking upon the part of the latter to perform, the contract is nevertheless mutual, and the latter is bound to the performance of the covenants and conditions thereby impliedly imposed upon him.

2. Where as to one of its essential elements time is of the essence of the contract, and the party in whose favor the stipulation as to time was incorporated does not insist on that stipulation, the other party cannot avoid performing his part of the contract on the ground that he himself did not perform within the time limited, especially where after the expiration of that time he has actually filed an equitable petition to compel performance by the other party.

3. The contract upon the interpretation of which the questions in this case were made, was correctly construed by the trial judge in his instructions to the jury; the verdict was supported by the evidence, and a new trial was properly denied.

March 25, 1895. Brought forward from the last term. Code, §4271(a-c).

Equitable petition. Before Judge WELLBORN. Union superior court. April term, 1894.

On August 16, 1890, James S. Hamilton and John England entered into the following contract:

"This is to certify, for and in consideration of fifty ($50.00) in hand this day paid, receipt for which is herewith acknowledged, paid by Jas. S. Hamilton, that I have and do hereby bind myself to make deed to a certain mineral interest in a tract of land in Towns county, . . under the following conditions: Provided the said Jas. S. Hamilton shall pay the sum of five hundred dollars ($500) by or on October 1st, 1890; shall pay $1,500.00, fifteen hundred dollars, by or on March 1st, 1891. And further, that should the property be sufficiently developed and of sufficient worth on March 1st, 1891, the said Jas. S. Hamilton shall pay two thousand dollars ($2,000.00) on or by Sept. 1st, 1891, and two thousand dollars ($2,000.00) on or by March 1st, 1892. The question of the worth of the property [to] be decided by arbitration of men of experience in corundum mining, provided the said Hamilton and myself cannot agree. It is a further condition, that the said Hamilton shall proceed at once, or as soon as practicable, to work and open the property for mining purposes. If payments are not paid at maturity, the contract becomes null and void."

On March 28, 1891, Hamilton brought his petition against England for specific performance of the contract, alleging that, in addition to the $50 cash payment, he paid England $500 on October 1, 1890, and that on March 1, 1891, he sought to agree with England as to the value of his interest, and failing to do so, offered to arbitrate the matter as stipulated in the contract, but England refused to do this and declined to appoint any one to act for him; whereupon Hamilton's arbitrator proceeded to act alone, and having fully examined and investigated the property, fixed the value of England's interest at $2,050, deducting from which the $550 already paid, left $1,500 which Hamilton tendered to England, and made the tender continuous. This petition was answered by England, who claimed that the property

was fully worth $6,050, and offered to make Hamilton a deed thereto upon payment of $5,500 which he alleged was the balance due under the contract. On April 4, 1894, Hamilton filed an amendment alleging, that by the terms of the contract time was of the essence thereof; that if the payments provided for were not made at maturity the whole contract became null and void; that he tendered England $1,500 on March 1, 1891, and the same was refused; that he had fully worked, tested and developed the mine, and since said tender had expended $8,000 or other large sum on said development, and the mine had turned out to be utterly worthless. Therefore he withdrew his tender of the $1,500, as well as his application for specific performance, and prayed that the contract be decreed null and void and be cancelled, and that he have judgment against England for the $550 already paid him. Verdict and decree were rendered, that England execute to Hamilton a deed to the property, and recover of Hamilton $1,500 with cost. Hamilton moved for a new trial on the general grounds, and for error in the court's charge construing the contract; and the motion was overruled. The charge complained of was: "I construe it to mean this: that it is conditional as to the two last payments of two thousand dollars each, provided for in it, and unconditional as to the first three payments of fifty dollars, five hundred dollars, and fifteen hundred dollars; that the aggregate of these first named amounts represents the valuation placed by both parties on the property as it then appeared, and that Hamilton was bound to pay that much without reference to how the mine might develop, and that any failure to pay these first named amounts would not make the contract void."

HOWARD THOMPSON and W. S. PICKRELL, for plaintiff.
M. G. BOYD and W. E. CANDLER, for defendant.

ATKINSON, Justice.

The facts other than those herein recited are suffi-
ciently stated in the official report.

1. We do not think that the contract set forth in the
record, and which is made the basis of the action in this
case, was a unilateral agreement, imposing an obligation
to perform upon one of the parties only. If such had
been their intention, it would have been only necessary
for one of them to have signed the agreement. It is an
instrument executed as to each of the parties under
seal, and this, without more, imports a consideration for
the covenants and undertakings of the respective par-
ties as expressed therein or implied therefrom. The
plaintiff, Hamilton, brought a suit against England, the
other party, to compel a specific performance of his con-
tract, and to compel a conveyance of. the premises upon
the terms expressed in the contract. He alleged, at
the commencement of the suit, that he had performed
and stood ready to perform his undertakings, and de-
manded the execution of the deed in compliance with
the undertaking of the other party. England in his
answer set up a claim against Hamilton for the payment
of the two sums first in the contract stipulated to be
paid; and upon the filing of this answer, Hamilton
amended his petition, and undertook thereby to with-
draw from his suit the prayer for specific performance,
and inserted a prayer for the restitution by England of
a part of the money paid by him in pursuance of the
contract. If there was ever anything doubtful about
the interpretation of this contract; if as to its true mean-
ing it was in the first instance in the least degree equiv-
ocal, we think these doubts have all been resolved by
the subsequent conduct of Hamilton. Illuminated as
the dark spots in this transaction are by the evidence
showing his recognition of the obligation of this con-
tract upon him, of his acceptance of its terms, his in-

sistence upon its performance and execution by England,. there can be no doubt that the contract imposed upon him, as well as England, the performance of some duty.. In determining what this duty is, it is necessary to look. to the language of the agreement. His covenant was. to pay to England five hundred dollars on the first day of October, and fifteen hundred dollars on March 1st.. He in fact paid the five hundred dollars as·he under- took to do, and alleges in his prayer for specific perform-- ance that he actually tendered the other fifteen hundred. dollars at the time and place stipulated for the payment. thereof. So that, according to his understanding of this. agreement, he was at all events bound to pay the two. thousand dollars. We think that his construction was. the correct one, and that he was bound at all events by this contract to pay these two sums. The other pay-- ments contemplated by the agreement were left condi- tional upon the happening of a future event, and as that event did not transpire, Hamilton never became liable: for either of those payments. The judge and jury upon the trial of this cause took the same view of the con-- tract touching the liability of Hamilton thereunder as. he did himself at the institution of the suit, and found accordingly; and the charge of the court construing for· the jury the terms of that contract is in exact accord with the opinion we now express.

2. It was insisted by Hamilton that he was excused. from a performance of the contract, and that he was entitled to recover of England the money paid, under this stipulation of the agreement: "If payments are. not paid at maturity, the contract becomes null and void." He claims that the effect of this stipulation was. to make time of the essence of all of the covenants con- tained in the contract, and that a failure upon his part to meet any one of the payments provided for by the contract should operate to put an end to his obligation

to perform.    This we think is a strange view to take of that stipulation in the agreement.  It is a well settled and universally recognized rule of law, that no man can profit by his own wrong; and that no man ought to be permitted to profit by a failure upon his own part to perform the obligations imposed upon him by the terms of an agreement to which he was himself a party, is a principle equally well founded both-in law and morals.    The obligation imposed by the agreement was, that Hamilton should pay at the specified times the two several sums as stipulated in the contract; that was one of the obligations that he assumed and upon a valuable consideration; and yet we are invited to so construe the covenant as to time as not only wholly to excuse him from the future covenants, but likewise to restore to him moneys expended in the execution of covenants already performed. In other words, he is to be not only excused, but paid a premium upon his own default.   We do not think this covenant, in the light of this agreement, bears any such interpretation.   On the contrary, we think the rational construction to be placed upon this contract is, that a failure to perform within the time limited upon the part of Hamilton would excuse a subsequent non-performance upon the part of England; but we think, to hold that, though England were willing to waive the forfeiture upon his part, Hamilton, because of his own default, nevertheless stands absolved of all obligations under the terms of his contract, is to do violence to the most obvious rules of law and the plainest principles of justice.

Let the judgment of the court below be   *Affirmed.*