TILLMAN *v.* DUNMAN, executor, *et al.*

1. It is the right of an executor offering land for sale at public outcry to with-draw the same at any time before the hammer falls.

2. Although the motive of the executor in withdrawing the property from sale before the bid was accepted was the result of collusion between himself and another who had bargained for the premises at a private sale, and the with-drawal was made with the design of completing the private sale, nevertheless  the person who had made the last and highest bid before the same was with-drawn could not insist upon the right to take the land as a purchaser.   While

such collusion between the executor and another would be open to inquiry by legatees and creditors, it is not open to inquiry at the instance of a stranger.

Argued November 22, — Decided December 12, 1901.

Equitable petition.    Before A. P. Persons, judge pro hac vice. Harris superior court.    April 8, 1901.

*Hatcher & Carson,* for plaintiff.
*Terrell & Terrell* and *J. B. Burnside,* for defendants.

LITTLE, J.    Tillman filed an equitable petition in the superior court of Harris county, against P. W. and J. E. Dunman, executors of Joseph Dunman, deceased, and T. T. and G. N. Murrah, and Murrah Brothers, praying that the executors above named be required to execute and deliver to him a deed to certain described lands; that T. T. and G. N. Murrah or Murrah Brothers be required to surrender for cancellation such deeds of conveyance as they may have received from these executors, as being a cloud on petitioner's title; that all the defendants be restrained and enjoined from changing the status of the property; and for general relief. The allegations of the petition are substantially as follows: Joseph Dunman died testate, seized and possessed of certain described property; his will was duly probated, and letters testamentary issued to P. W. and J. E. Dunman, who as executors entered into possession of the lands of their testator for the purpose of administering his estate and carrying out the terms of the will, under the provisions of which they duly advertised for sale certain lands of decedent, for the purpose of paying the debts of the estate, and for distribution among the legatees, according to the statute and the terms of the will.    The advertisement recited that the land was to be sold in five parcels "for cash," before the court-house door of Harris county, on the first Tuesday in February, 1900.    At that time and at the place above stated, petitioner being present, the executors read the advertisement publicly and began to sell the land in the order and parcels as therein stated.    Petitioner with others bid for the same, and two parcels were knocked off to him, and one to another bidder.    A certain described parcel of the land was then offered and cried for sale, and petitioner bid thereon, as did one of the defendants in this case (Murrah), and others present, and the bids were accepted and cried until finally petitioner bid a certain sum which was accepted and cried by the auctioneer conducting

the sale, and no person would raise petitioner's bid, which was the best and highest bid.    Murrah then announced publicly that Murrah Brothers or himself had bought this tract at private sale, and whoever bought it would buy a lawsuit, and that he claimed the property; after which the bidding was continued; when petitioner announced that his bid had been accepted and cried, and if any one wanted to bid, then to raise his bid; but no one raised it, and he claimed the property, his bid being the highest and best offer.    The executors then consulted their attorney and said they would withdraw that parcel from sale, and then proceeded to sell the remaining tracts advertised.   Petitioner publicly announced that he claimed the property, and denied the legal right of the executors to withdraw the land from sale to consummate a private sale previously made for a less amount than his bid; and thereupon tendered the amount of his bid and demanded that the executors make him a deed to the tract, and they refused to accept the money or execute and deliver to him a deed to the same.    Petitioner thereafter frequently tendered the purchase-price to the executors, and tenders the same into court upon filing his petition.    It is charged that T. T. and G. N. Murrah, either as individuals or as a firm, have entered into a combination or conspiracy with the executors to defeat petitioner's title and prevent his possession and ownership of the land, and have procured from the executors deeds of conveyance thereto, and are now in possession claiming title to the same.    This tract of land has not since been advertised by the executors, who claim that they had made a private sale of this land to T. T. and G. N. Murrah, and that, when petitioner bid a higher price at the sale than had been agreed on at this private sale, they were forced to withdraw the land and protect the purchasers in their private bargain.   Petitioner insists that, after he had bought two parcels or tracts of the land, it would be inequitable and unjust for the executors to refuse to accept his bid for another tract, and consummate a sale of same, made privately before the date of the sale as advertised, at a less price than was bid by the petitioner at the sale. A general demurrer to this petition was sustained by the trial judge, and the petition dismissed; and to the order sustaining the demurrer and dismissing the petition Tillman excepted.

1. The questions to be determined in this case are, whether an executor has the right to withdraw property from sale, after it has been

duly advertised and offered for sale at public outcry by an auction-
eer employed by the executor, and bids are received and cried, be-
fore the same is knocked off to the highest bidder; and whether the
highest bidder in such a case acquires any right, by reason of his bid,
to compel the executor to accept the same and make him a deed upon
tender of the amount so bid.　As a decision of these two questions
is controlled by the same principle of law, they will be considered
together.　It is well-recognized law that a bidder at an auction sale
may withdraw his bid even after it has been cried, at any time before
the hammer falls or the property is knocked off to him.　See Payne
v. Cave, 3 Term Rep. 148; 3 Am. & Eng. Enc. L. (2d ed.) 501, and
cases there cited.　In Payne v. Cave, supra, the principle underly-
ing this rule is thus stated:　"The auctioneer is the agent of the
vendor, and the assent of both parties is necessary to make the con-
tract; that is signified on the part of the seller by knocking down
the hammer. . . Every bidding is nothing more than an offer on
one side, which is not binding on either side till it is assented to."
For the same reason the seller has the right to withdraw the prop-
erty before it is knocked off to the bidder.　Mr. Story in his trea-
tise on the Law of Sales, § 461, states the rule thus:　"In a sale
by auction the seller may withdraw the goods, or the bidder may
retract his bid, at any time before they are knocked off; for so long
as the final consent of both parties is not signified by the blow of
the hammer, there are only mutual propositions, but no mutual
agreement to one definite proposition."　See 2 Kent's Com. (4th
ed.) * 537; Carryolles v. Mossy, 2 La. Rep. [504].　But it is
claimed that this rule of auction sales does not apply to sales by
administrators and executors, as they are regulated by statute, which
must be strictly complied with; and that while such representa-
tives are vested with large discretion, they can not lawfully with-
draw property when it has been exposed for sale after due adver-
tisement.　There is a close resemblance between an executor's or
administrator's sale, when made under an order of court, to one
made under an execution or decree, or other compulsory process;
but where the sale is made under a power contained in the will,
the executor's sale more nearly resembles that of an individual of-
fering his property for sale.　But granting, for the sake of the
argument, that the sale in question rested upon the same footing
with judicial sales, we find that it has been determined that

an officer of court has a right to withdraw property, even when offered for sale under compulsory process, and bids have been received and cried, and that the bidder at such a sale acquires no right to compel the officer to convey the property, even where his bid is the best and highest, unless the property is knocked off to him or the hammer falls, and the sale is thus completed. Mr. Freeman in his work on Executions, vol. 2, § 288, p. 1665, says, on authority, " Officers charged with the duty of conducting chancery, trustee, and other involuntary sales have also a discretion to withdraw the property after being offered for sale." In the case of Miller *v.* Law, 10 Rich. Eq. (S. C.) 320, it was ruled that " The commissioner has a discretion, subject to the control of the court, to withdraw land from sale after it has been offered, and even after a bid has been received and cried. If he does so, the highest bidder is not entitled to a conveyance, there being no contract with him." It was ruled by the Supreme Court of the United States, in the case of Blossom *v.* Ry. Co., 3 Wall. 196, that " A bidder at a judicial sale at public auction, whose bid has not been accepted, . . can not insist, even though he have been the highest and best bidder, on leave to pay the amount of his bid, and have a confirmation of the sale made to *him.*" Mr. Justice Clifford, in delivering the opinion of the court in that case, after stating the rule above quoted from Story on the Law of Sales, says : " The same rules prevail upon a sale under a common-law process as in other cases of sales at public auction." From the foregoing authorities it seems to be well settled that, on principle as well as by well-considered adjudications, the officer offering property at a judical sale, except where his discretion is controlled by the order of sale, can withdraw the property offered for sale before the same is knocked off ; and that a bidder at judicial sales acquires no right to compel a conveyance of the property offered, until the same has been knocked off to him. See also, in this connection, *Scales* v. *Chambers,* 113 *Ga.* 920. It would, therefore, seem that even if the rule governing judicial sales is to be applied to the sale by the executors in the present case, they had the right to withdraw the property offered from sale; and that Tillman by reason of being the highest and best bidder at such sale acquired no right to compel a conveyance by the executors, as the property was withdrawn before the same was knocked off to him by the auctioneer, for the reason that there was no acceptance of his offer, and no contract.

2. But it is contended that it would be inequitable for the executors, after having advertised the land and after having sold to petitioner other parcels, to withdraw this parcel from sale when he desired it to complete the tracts which he had purchased; and that to allow the executors to withdraw the land from sale for the purpose of carrying out a private sale for less than the amount of petitioner's bid is against public policy. The reply to this contention is that petitioner, having acquired no right to compel a conveyance to him, and in fact having acquired no right at all, since his offer was rejected, is a stranger to that transaction, and has no right to inquire into the motives which prompted the executors to withdraw the property from sale; and being such, he can not make the question that the act of the executors was against public policy. The acts of the executors are open to inquiry only to the creditors, heirs, or legatees of the deceased, or to some other person having a beneficial interest in the estate of the testator. We are therefore of opinion that the trial judge did not err in sustaining the demurrer and dismissing the petition.

　　　　*Judgment affirmed. All the Justices concurring.*