SMITH *et al. v.* TIPPINS *et al.*

No. 17134. SEPTEMBER 12, 1950.

*Jackson & Graham, W. Reeves Lewis,* and *Myrick & Myrick,* for plaintiffs.

*T. Ross Sharpe, Robert Odum,* and *Hitch, Morris, Harrison & Smith,* for defendants.

CANDLER, Justice. On November 7, 1949, Mrs. Kate Smith and her four named sisters brought a suit for declaratory relief in Chatham Superior Court against John U. Tippins Jr., their brother, and The Citizens and Southern National Bank, as administrator of the estate of John U. Tippins Sr., their father. As amended, the petition alleged: The Citizens and Southern National Bank, as administrator of their father's estate, was granted leave by the Ordinary of Tattnall County to sell at public outcry and to the highest bidder for cash, certain lands in that county belonging to the estate of its intestate. On the first

Tuesday in November, 1949, after proper advertisement, during the legal hours of sale, at the place of public sales, and after first announcing that "The purchaser or purchasers, at this sale, will be required to comply with their bids within two hours from the time when this sale is completed, and purchasers will be required to pay in cash, certified check, cashier's check, or New York exchange, the amount of their bids, if said property is knocked off to them," the defendant bank, as administrator, offered its intestate's lands for sale at public auction, and John U. Tippins Jr.'s offer of $75,000 was the highest bid received for tracts 8, 9, and 10 thereof, and they were knocked off to him by the administrator's auctioneer at and for the amount of his bid, but there was no acceptance of his bid or subsequent confirmation of the sale. The sale was finished at 12:25 p.m., and immediately after the sale, the petitioners orally objected to an acceptance and confirmation of their brother's bid, on the ground that it was for an amount far below the true value of the property bid off by him, and $14,000 less than its appraised value. Subsequently, but within two hours after the bidding was over, they filed with the administrator written objections to a confirmation of their brother's offer on the ground of its inadequacy, and made a cash offer of $90,000 to the administrator for the property involved. The defendant Tippins made no effort to comply with his bid during the two hours immediately subsequent to the sale, but later during the same day he offered to pay the administrator the difference between his distributive share in the estate as an heir at law of the administrator's intestate and the amount of his bid, and it was about twenty-four hours after the sale was over before he made an actual tender of the full amount of his bid, which the administrator then declined to accept. The prayers were: (1) for process; (2) that the court declare the administrator's alleged sale to the defendant Tippins to be not a sale, null and void, and of no effect; (3) that the defendant Tippins be restrained and enjoined from paying or tendering to the administrator the amount of his bid, and the administrator be restrained and enjoined from accepting it if tendered until there is a final adjudication as to the validity or invalidity of the sale; (4) that the court declare the entire sale as it relates to tracts 8, 9, and 10 to be void, and

order the administrator to readvertise and resell said property in accordance with law; and (5) for general relief.

The defendant, John U. Tippins Jr., responded, and answering the petition said in substance: He was present when his father's lands in Tattnall County were sold at public auction by the administrator of his estate, namely, The Citizens and Southern National Bank. He, in good faith, bid $75,000 for tracts 8, 9, and 10 of the same and they were knocked off to him, as the highest bidder, by the administrator's auctioneer. The representatives of the bank, as administrator, who were conducting the sale immediately thereafter accepted his bid, and a public announcement was then made by the administrator's attorney for all successful bidders to come to the bank for the purpose of closing the sales which had just been made; that in less than thirty minutes after the sale was over he went to the bank and was informed by its officers that his sisters had filed objections to the sale as it related to the tracts knocked off to him, and for that reason the administrator could not consummate its sale to him, and the respondent was asked to increase his offer from $75,000 to $89,000—the appraised value of the land bid off by him—but he declined to do so, since he had openly and fairly purchased it, his bid had been accepted, and there was no valid reason why his purchase should not be consummated by the administrator. The respondent, in further answer to the petition, said that he went to the bank again, in less than two hours after the sale, and stated to its representatives who were handling his father's estate that he was there for the purpose of closing his part of the sale, and Mr. Sharpe, attorney for the administrator, in the presence of the bank's executive officers, again stated to him that the bank, as administrator, could not proceed further with a sale of the property to him because his sisters—a majority of the heirs at law who had a right to "disaffirm" the sale—had filed written objections to a confirmation of any sale of the same to him. At that time the respondent was informed by those representing the administrator that it would be legally necessary for the bank as such administrator to readvertise and resell the property bid off by him, and that the administrator, because of the objections made by his sisters, could not and would not close a sale of the same with him. The

respondent also said that he went to the bank a third time on the day of the sale and requested that his distributive share in his father's estate be figured up; that it be credited on his bid of $75,000; and that he be permitted to pay any balance due on the property which he had purchased, but that request was also refused, and the administrator again declined to close its contract with the respondent for the land he bid off because of the objections interposed by a majority of the heirs at law. In this connection, it was alleged that the heirs at law and the administrator had previously agreed that any one of the several heirs at law who purchased at the sale might finance his or her bid in that way, and one of the petitioners, Mrs. Alexander, was permitted to do so. On the next day after the sale, the respondent tendered to the administrator the full amount of his bid, to wit, $75,000, and its acceptance was refused because of the objections previously interposed. Further answering, and by way of cross-action against The Citizens and Southern National Bank, as administrator, the respondent Tippins also alleged: that the objections interposed by the petitioners to his bid were "frivolous and without substance"; that the administrator had first offered the three tracts bid off by him separately and the highest aggregate offer received for them, when so offered, was $66,000; that the sale was regularly conducted and attended by a large number of bidders; that the property in question was knocked off to him by the auctioneer and his bid was promptly accepted by the administrator; that he offered to comply with the terms of his bid within two hours after the sale; that the administrator declined to consummate its contract with him because of the objections interposed by the petitioners, and for no other reason; that the full amount of his bid was unconditionally tendered the administrator on the day subsequent to the sale, and a continuous tender of the same is made; and that the administrator should now be required to specifically perform its contract of sale; and there was a prayer for such affirmative relief.

The petitioners demurred generally to the respondent's answer and cross-action, and moved to strike it, on the grounds that it set up no defense to the petition and alleged no sufficient cause for specific performance against The Citizens and Southern

National Bank. They also interposed several special demurrers to various allegations of the answer and cross-action as being vague, indefinite, immaterial, and mere conclusions of the pleader. All of the demurrers were overruled, exceptions pendente lite were preserved, and error is assigned on them in the bill of exceptions.

The Citizens and Southern National Bank, as administrator, by separate response to the petition, in substance said: The bid of $75,000 made by John U. Tippins Jr. for the property involved was accepted by it as administrator immediately after the property was knocked off to him, and all successful bidders were then notified to come to the bank for the purpose of closing sales. A majority of the heirs at law of its intestate immediately thereafter objected to a consummation of the sale in so far as it related to the land bid off by John U. Tippins Jr.; and, because of the objections interposed by them, the administrator declined to proceed further with the sale to him. John U. Tippins Jr. came to the bank within two hours after the sale was concluded for the purpose of finding out what could be done about his bid, knowing at the time that a majority of the heirs had filed objections to a consummation of the sale, was told that the administrator could not proceed further with the sale because of the objections, and that a resale of the land bid off by him would probably be necessary. On the day following the sale, the defendant Tippins tendered it, as administrator, the full amount of his bid for the land knocked off to him, but, because of the objections previously interposed, an acceptance of the same was refused.

The petitioners demurred generally to the administrator's response on the ground that it alleged no defense to the petition. The demurrer was overruled, exceptions pendente lite were timely filed, and error is assigned upon them in the bill of exceptions.

On the trial the evidence was voluminous, but by it and by admissions made in the pleadings these facts are overwhelmingly shown: The administrator had authority from the court of ordinary to sell the land in question. Its sale of the same was legally advertised and properly conducted. The defendant Tippins was the highest and best bidder for the land involved. It was knocked off to him by the auctioneer, and his bid of

$75,000 for the same was promptly accepted by the administrator. A majority of the heirs at law of the administrator's intestate objected, both orally and in writing, to a consummation of the sale on the ground that the highest bid received for the same was for an inadequate amount; and the administrator thought that a majority of the heirs had a legal right, since the property being sold was realty, to "disaffirm" the sale. The defendant Tippins offered to comply with his bid within two hours after the sale was over, and the administrator, because of the objections previously interposed, declined and refused to proceed further with a consummation of the sale and advised the bidder that a resale of the property knocked off to him would be necessary. On the next day after the sale, the defendant Tippins made an unconditional tender of the full amount of his bid and the administrator, because of the petitioners' objections and for no other reason, declined to accept it. A continuous tender of the bidder's offer was made.

In answer to questions propounded, the jury found that the administrator accepted the bid made by the defendant Tippins for the land knocked off to him; that he offered to comply with the terms of his bid, in accordance with the requirements of the sale, within two hours after the bidding was over; and that the administrator declined and refused to consummate its contract of sale because of the objections interposed by the petitioners, and for no other reason. A decree, requiring the administrator to specifically perform its contract of sale on payment of the purchase money, was, accordingly, entered.

The petitioners made a motion for new trial, but no supersedeas was obtained, and The Citizens and Southern National Bank, as administrator, after the defendant Tippins had paid the full amount of his bid, complied with the decree by specifically performing its contract of sale. The motion for new trial, after being amended by the addition of several special grounds, was overruled, and error is also assigned in the bill of exceptions on that judgment.

■ We deal first with the plaintiffs' demurrers to the answer and cross-action of the defendant Tippins. It is argued that the allegations thereof are insufficient to state a proper cause for the equitable remedy of specific performance, and that the plain-

tiffs' general demurrer raising that question should have been sustained. We do not concur for these reasons:

(a) Equity will require an administrator to specifically perform a valid contract which he has made for the sale of land. Code, § 113-1702; *Mallard* v. *Curran*, 123 *Ga.* 872 (51 S. E. 812);*Altman* v. *Whitaker*, 186 *Ga.* 85, 91 (196 S. E. 717). And where an administrator has authority to make a sale of real estate at public auction, a contract of purchase and sale is completed upon the fall of the auctioneer's hammer at a properly conducted sale. *Tillman* v. *Dunman*, 114 *Ga.* 406 (40 S. E. 244); *Mallard* v. *Curran*, supra. See also, in this connection, *Scales* v. *Chambers*, 113 *Ga.* 920 (39 S. E. 396). It is the right and duty of an administrator who is conducting a public sale of property belonging to the estate of his intestate to withdraw the same from sale when it is manifest that the property is about to be sacrificed at a grossly inadequate price (*Rogers* v. *Dickey*, 117 *Ga.* 819, 45 S. E. 71; *Williams* v. *O'Neal*, 119 *Ga.* 175, 45 S. E. 978); but it is too late for the administrator to do so after the property is knocked off to the highest bidder. *Bean* v. *Kirkpatrick*, 105 *Ga.* 476 (30 S. E. 426); *Tillman* v. *Dunman*, supra.

(b) Inadequacy of price alone affords the administrator no defense against a demand for specific performance of a contract for the sale of land when the property has been legally sold at public auction (*Palmour* v. *Roper*, 119 *Ga.* 10, 45 S. E. 790; *Black* v. *Elrod*, 146 *Ga.* 692, 92 S. E. 62); and this is true for the reason that the price realized for property at public auction, at a properly conducted sale, represents the common and considered opinion of those present at to its value; and such sales, when made in conformity to law, as a matter of course and public policy, must be binding, otherwise who would bid at such a sale if his purchase were to be open to question for inadequacy of price? *VanDyke* v. *Martin*, 53 *Ga.* 221.

(c) Tested by the rule announced in *Finney* v. *Blalock*, 206 *Ga.* 655 (58 S. E. 2d, 429), and the authorities there cited, the allegations of the cross-action respecting tender are sufficient to show a waiver thereof by the administrator. And the plaintiffs in the instant case, having objected as they did to a consummation of the administrator's sale of the land in question, will

not be heard to complain of the bidder's failure to comply with the terms thereof requiring payment of the purchase money within two hours after the sale was concluded. The familiar rule of estoppel prohibits such, and this is true because no man can profit by his own wrong. *Hamilton* v. *England*, 95 *Ga.* 693 (22 S. E. 697). Nevertheless, in the instant case, as shown by our report of the facts, the allegations of the cross-action likewise show that the purchaser Tippins made a bona fide effort, within the time required, to comply with the terms of his offer; that, before asking for specific performance, he made an actual unconditional tender to the administrator of the full amount of his bid for the property knocked off to him; and that, upon the administrator's refusal to accept the same, he made a continuous tender of it; and it is well-settled that the purchaser at an auction sale, whose bid has been accepted, is required to do no more before asking a court of equity to require specific performance of a contract so made. *Kerr* v. *Hammond*, 97 *Ga.* 567 (25 S. E. 337); *Miller* v. *Watson*, 139 *Ga.* 29 (76 S. E. 585).

(d) There is no statute in this State requiring confirmation of an administrator's sale; the bidder's offer becomes a contract when the administrator, clothed with authority to sell, accepts his bid. Either party to the contract may then enforce performance by the other. 3 Am. & Eng. Enc. L. (2d ed.) 501; *Tillman* v. *Dunman*, supra. But assuming that the ordinary may authorize an administrator to sell his intestate's land upon that condition, it can not be said, as the plaintiffs contend, that such was done in the instant case by the following words appearing in the order for sale: "It is further ordered that said administrator be and is hereby authorized and permitted to offer said property for sale in parcels, also to offer the timber and land separately, confirming the sale to the bidder or bidders whose bids amount to the highest cash dollar." Concerning this, it is sufficient to say that the administrator in the present case complied with its order of sale when it accepted the highest bid received for the three tracts in question, they being finally offered for sale together.

We have carefully examined and fully considered the several grounds of special demurrer and find no merit in either of them. ■ The remaining headnotes do not require elaboration.

*Judgment affirmed. All the Justices concur.*