A98A1926. BUCKMON et al. v. FUTCH.
(514 SE2d 863)

RUFFIN, Judge.

Jack Futch sued Cynthia Buckmon and Carl Buckmon, as joint administrators of the estate of Maeleather Buckmon Carter, claiming breach of contract pursuant to a public sale of land. Following a bench trial, the trial court ordered specific performance of the contract, and defendants appeal. For reasons discussed below, we reverse and remand the case for proceedings consistent with this opinion.

On August 25, 1997, defendants petitioned the probate court for leave to sell, at public outcry, property belonging to the estate that included three adjoining tracts of land together with a house. The petition stated that defendants wanted the sale to be conducted subject to the following conditions: (1) sale of the separate parcels first, followed by sale of the whole; (2) use of the method of sale bringing the highest bid "shall be accepted"; (3) that the sale be conducted by defendants' attorney or other designated agent; and (4) that bidders must present "certified funds, cash, or a letter of credit." On October 6, 1997, the probate court granted defendants' petition and ordered that the property be sold as prescribed by the petition. The probate court further ordered that the property be sold on the first Tuesday in November 1997, "to the highest and best bidder for cash, at public outcry . . . after first advertising the same . . . in the *Bryan County Times*."[1]

On November 4, 1997, the property was offered for sale on the Bryan County courthouse steps. Among those in attendance were plaintiff; Barry Bacon who represented plaintiff and submitted a bid on his behalf; Wayman Hagan, a bidder; Doris Thompson, a bidder; and Ralph Chapman, plaintiff's bank loan officer. The sale was con-

---

[1] There is no copy of the legal advertisement giving public notice of the sale in the record.

ducted by defendants' attorney, who read the legal advertisement and announced that the house had sustained termite damage and would be sold "as is." Those who attended the sale gave conflicting testimony regarding whether defendants' attorney also announced that the sale would be subject to the probate court's approval. It is undisputed that plaintiff, through his agent, was the highest bidder at the sale, having bid $42,500 for all three lots and the house.

Shortly after the auction, the parties went to the probate office where plaintiff gave defendants' attorney a loan commitment letter, confirming that he had secured the funds to purchase the property. Plaintiff testified that it was his understanding that defendants' attorney would prepare the deed granting him the property. On the same day, plaintiff went to the bank and procured $42,500 in certified funds from the bank made payable to himself and to defendants' attorney. Plaintiff delivered the check to defendants' attorney and agreed to wait a few days before taking possession of the house so that defendants could remove personal belongings.

Three days after the auction, plaintiff went to the defendants' attorney's office to pick up the key to the house and learned that defendants did not want to sell the property at the auctioned price.[2] Defendants' attorney returned plaintiff's check by certified mail on November 14, 1997. Plaintiff thereafter brought this suit, seeking specific performance of the contract. At trial, defendants argued, among other things, that the trial court should not order specific performance since the sale was never approved by the probate court. The trial court found that defendants' attorney made an announcement that "the sale had to be approved by the Probate Court," but ruled that since there was "no such provision in the laws of Georgia," plaintiff was entitled to specific performance of the contract.

1. In two enumerations of error, defendants contend that the trial court erred in ordering specific performance because the sale was conditioned upon approval by the probate court. To the extent the trial court based its order on the erroneous legal conclusion that probate court approval cannot be made a condition of a public sale, we agree.

The trial court found that defendants' attorney announced, prior to the auction, that the sale of the property would be subject to the probate court's approval. Although there was conflicting testimony on this issue, we are bound by the trial court's determination.

The finder of fact, in this case the superior court judge, is

---

[2] Also on this date, defendants filed a motion with the probate court to disaffirm the public sale, stating that the $42,500 price was below the value assessed by the county tax assessor. There is no indication in the record that this motion has been ruled upon.

the final arbiter of the weight of the evidence and the credibility of witnesses. The judge's findings of fact will not be disturbed on appeal as long as there is any evidence to support those findings. OCGA § 9-11-52 (a).

*Hughes v. Cobb County*, 264 Ga. 128, 130 (1) (441 SE2d 406) (1994). Thus, the issue on appeal is whether the trial court erred in concluding that an administrator cannot condition a public sale upon probate court approval. Since "[t]he construction of a contract is a question of law for the court," we review this issue de novo. *Sagon Motorhomes v. Southtrust Bank of Ga., N.A.*, 225 Ga. App. 348, 349 (484 SE2d 21) (1997).

Plaintiff first argues that the administrator's power to make parol modifications at the time of sale are limited commensurate with the authorizing language of the probate court's order granting the petition to sell. However, the Supreme Court has held that "[t]here is no specific requirement that an order granting leave to sell specify the terms of sale." *Adamson v. Petty*, 230 Ga. 87, 89 (2) (195 SE2d 436) (1973). In *Adamson*, the Court also explained that while "[t]he administrator shall, however, state the terms of sale in all advertisements for sale," it declined to strictly apply the common law rule that "printed or written . . . conditions of sale could not be contradicted, added to, or altered by verbal declarations made by the auctioneer at the time of sale." Id. at 89-90. Indeed, the Court held that "when the bidder or purchaser has full knowledge of such altered terms, and acts upon them" it would not "exclude all parol declarations as to the altered terms of sale from the printed or written advertisements made by . . . administrators at their public sales." (Punctuation omitted.) Id. at 90; see also *Duncan v. Baggett*, 247 Ga. 609, 611 (2) (277 SE2d 733) (1981) ("mere failure of the administrator to advertise specific terms of sale is not a sufficient ground to set aside the sale, where the terms of the sale were announced on the day of the sale").

Plaintiff argues that cases wherein oral modifications at the time of sale were upheld only relate to additional terms "that enhance and complete the sale, such as extension of credit or detailed financing terms." See, e.g., *Duncan*, supra ("advertisement of sale made no mention of credit[,] [y]et credit was extended at the sale"). However, nothing in these cases suggests that their holdings are limited to methods of payment after a sale. Rather, the appropriate focus is on whether "the bidder or purchaser has full knowledge of such altered terms, and acts upon them." See *Adamson*, supra. Here, plaintiff came to the auction prepared to bid on the estate's land, without having previously been advised that the conditions of sale would be altered from those enumerated in the advertisement. If

plaintiff heard the defendants' attorney condition the sale upon probate court approval, and he bid on the property with that condition in mind, he cannot complain now that he does not wish to be bound by that condition. It would then be for the probate court to decide whether it should entertain defendants' argument that they did not obtain an adequate price for the property or whether defendants should be bound by their initial desire, as stated in their petition, that the highest bid "shall be accepted."

It is true, as plaintiff points out, that there is no provision in Georgia law that requires a public sale to be approved by a probate court. See *Smith v. Tippins*, 207 Ga. 262, 270 (1) (d) (61 SE2d 138) (1950). As a general rule, "where an administrator has authority to make a sale of real estate at public auction, a contract of purchase and sale is completed upon the fall of the auctioneer's hammer at a properly conducted sale." Id. at 269 (1) (a). However, it is also true that nothing in Georgia law precludes an administrator from requiring probate court approval as a condition of sale.

OCGA § 53-8-23 (a) provides that the administrator of an estate may petition the court for leave to sell "[i]f at any time it becomes necessary for the payment of the debts of the estate or for the purpose of distribution to sell the real property of the decedent." A sale without an order from the probate judge granting such a petition is void and passes no title to the purchaser. See *Dowling v. Keen*, 187 Ga. 394, 395 (1) (200 SE 789) (1939). OCGA § 53-8-24 governs where, when and how such a sale is to take place and sets forth the guidelines pursuant to which it first must be advertised. Nothing in either of these Code sections enumerates what conditions may be placed upon such a sale.

In determining whether an administrator can condition a public sale on probate court approval, we also look to *Smith v. Tippins*, supra, wherein the Supreme Court contemplated the possibility of such a condition. In that case, Tippins, one of the estate's heirs, made the highest bid, which the administrator accepted after the property was knocked off to him. Id. at 267. Immediately thereafter, a majority of the other heirs objected to the sale because Tippins' bid was far less than the property's appraised value. The Court upheld the sale because it was final "upon the fall of the auctioneer's hammer" and it was "the right and duty of [the] administrator who [was] conducting [the] public sale of property belonging to the estate of his intestate to withdraw the same from sale when it is manifest that the property is about to be sacrificed at a grossly inadequate price." Id. at 269 (1) (a). In considering whether the heirs had a right to have the sale approved by the probate court, the Court noted that "[t]here is no statute in this State requiring confirmation of an administrator's sale." Id. at 270 (1) (d). The heirs argued that pursuant to the probate

court's order authorizing the sale, they had a right to such review. In dicta, the Court assumed that a probate court "may authorize an administrator to sell his intestate's land upon that condition," but found under the language of that order, the court had not done so. Thus, the inference is that while probate court approval is not required by law, it is not prohibited either.

Here, nothing in the probate court's order itself authorized the sale to be conditioned upon approval of that court. However, as discussed above, while the order gives the administrator the authority to conduct the sale, there is no requirement that that order specify the conditions therein. See *Adamson*, supra. Thus, given that (1) an order authorizing a public sale need not contain all conditions of the sale; (2) the Supreme Court has allowed oral modifications to be made after the sale has been advertised; (3) nothing in the law prohibits an administrator from conditioning such a sale on probate court approval; and (4) the Supreme Court has contemplated the possibility that probate court approval may be had after a sale, we conclude that the trial court erred in summarily rejecting defendants' contention that the sale was subject to probate court approval. In so concluding, we note that the trial court did not have the opportunity to determine whether plaintiff in fact heard the defendants' attorney's announcement and acted on it or whether the defendants' attorney's conduct after the sale waived any such condition. Accordingly, we reverse the trial court's order granting plaintiff specific performance and remand the case for further proceedings consistent with this opinion.

2. Because of our holding in Division 1, we need not address defendants' remaining enumerations of error.

*Judgment reversed and remanded. Pope, P. J., concurs. Beasley, P. J., concurs in the judgment only.*

DECIDED MARCH 17, 1999.

*Lloyd D. Murray*, for appellants.
*Brown & Livingston, Charles H. Brown*, for appellee.