20766. CENTRAL OF GEORGIA RAILWAY CO. v. JONES.

Decided July 14, 1931.

508

*H. Wiley Johnson,* for plaintiff in error. *Shelby Myrick,* contra.

LUKE, J. (After stating the foregoing facts). The act of 1918, regulating the running of railroad-trains (Ga. L. 1918, p. 212), provides that railroad companies shall erect blow-posts four hundred yards from the intersection of the railroad with any public road; that the engineer shall blow the whistle when he reaches the blow-post; and "in addition thereto, after reaching the blow-post furtherest removed from said crossing, and while approaching said crossing, he shall keep and maintain a constant and vigilant lookout along the track ahead of said engine, and shall otherwise exercise due care in approaching said crossing, in order to avoid doing injury to any person or property which may be on such crossing, or upon the line of said railway at any point within fifty feet of such crossing." The petition alleges that the defendant was negligent per se, in that this statute was violated by the engineer in failing to "maintain a constant and vigilant lookout along the track ahead of said engine," and in failing to "exercise due care in approaching said crossing in order to avoid injury to any person . . within fifty feet of said crossing," and in failing to blow the whistle at the blow-post as required by the statute. Under the facts of this case the last-named allegation of negligence is material only for the reason that it tends to show that the engineer did not see the blow-post and therefore did not know that he was approaching the crossing; and thus supports the first two material allegations that the engineer was not keeping a constant and vigilant lookout as required by the statute. The defendant was further alleged to be negligent in running its engine and train at a speed of forty miles an hour towards and over said public-road crossing. The statute provides further that "the enumeration of certain specific duties as in this law expressed shall in nowise be

so construed as to relieve any railroad company from any duty or liability which may be imposed upon them by existing laws."

It will be noted that the deceased was on a public road that was frequently used, where he had a right to be, and of this the defendant was charged by law with knowledge; there was nothing to obstruct the engineer's view of this crossing for a distance of 200 yards, and he was charged by law with the duty of keeping a constant and vigilant lookout. Even after the deceased was stalled on the crossing the engine was between 150 and 175 yards from the crossing, and could have been stopped easily in a distance of 150 yards, but the engineer was not looking ahead and drove the train on at the rate of forty miles an hour. The deceased saw the train and knew that he had ample time to get across the track while the train was yet between 150 and 175 yards away; and the motor of his automobile was in good condition. Thousands of automobiles go across the track where one stalls on it, and the deceased had no reason to apprehend that his would not go across. The stalling of his automobile on the track was the result of an unforeseen intervention, and under the allegations of the petition his effort to cross the track, with the train at the alleged distance, did not affirmatively show a lack of ordinary care and diligence, and proof of these allegations should be submitted to a jury that they might determine this question of fact.

But the plaintiff in error says that the deceased, by getting out of the automobile, could have avoided the consequences of the alleged negligence. In this case, as in practically every such case, the injury could have been avoided if either party had done certain things; but the question is not whether the deceased could have avoided the injury by jumping out of the car, but whether his failure to do so, under the circumstances, amounted to a lack of ordinary care. Some men would have jumped out of the car. Others, just as the deceased did, knowing that the train was between 150 and 175 yards away, that the motor of his automobile was "in good condition," and believing that he could start it "in a few seconds," would have attempted to start the car and thus save his car and the possible wrecking of the train and the lives of the passengers. In *Wilson* v. *Central of Ga. Ry. Co.*, 132 *Ga.* 215 (63 S. E. 1121), the first ruling was as follows: "It appearing from the petition in this case that the plaintiff received certain

personal injuries while endeavoring to protect her property from fire which the defendant had caused through its negligence, and that the plaintiff was free from negligence and in the exercise of ordinary care, the petition stated a cause of action, and a general demurrer thereto should have been overruled." In the opinion of the court Justice Beck quoted approvingly from an Iowa case as follows: "One who, acting with reasonable prudence, voluntarily exposes himself to danger, for the purpose of saving the property of another in danger of destruction by fire negligently set out by a railroad company, may recover from the railroad company for the consequent injuries he received." He quoted from an Illinois case as follows: "One whose property is exposed to danger by another's negligence is bound to make such effort as an ordinarily prudent person would to save it or to prevent damage to it. If in so doing, and while exercising such care for his safety as is reasonable and prudent under the circumstances, he is injured as a result of the negligence against the effect of which he is seeking to protect his property, the wrongdoer whose negligence is the occasion of the injury must respond for the damages."

Who is to say what the average man would have done under the circumstances? Is it a question of law for the court or a question of fact for the jury? Furthermore, the deceased may have become frantic by the unanticipated and unforeseen stalling of his automobile on the railroad-track while the train was rushing towards him, and for this reason failed to jump. Would the average man have been excited and frantic under such circumstances? This is a question of fact for the jury. The plaintiff in error cites a street-car case decision to the effect that the injured party should have gotten out of the vehicle; but it is a matter of common knowledge that automobiles and mule-teams are often in front of street-cars and the driver retains perfect composure because he knows that the street-car is much lighter than a train and can be stopped more quickly, and is not apt to hit him. There is a vast difference between being in front of a street-car and being in front of a steam-engine with four or five cars traveling at the rate of forty miles an hour. The probable effect on one's nerves and emotions in the latter instance are far greater; and this would be a matter for the consideration of the jury in determining whether or not the average man would ordinarily become frantic under the circum-

stances alleged in the petition. In *Central of Ga. Ry. Co.* v. *Barnett*, 35 *Ga. App.* 528, 530 (134 S. E. 126), this court held: "Questions of negligence, including such questions of comparative negligence, questions as to what negligence constitutes the proximate cause of the injury, and questions as to whether the plaintiff could have avoided the consequences of defendant's negligence by the exercise of ordinary diligence, are such as lie peculiarly within the province of the jury to determine. . . While it is true that demurrers to petitions have been properly sustained in cases so palpably plain and indisputable that no interpretation could be reasonably entertained but that the facts set forth divested the plaintiff of a right of action, . . it has nevertheless been stated as a general rule, that 'except where a particular act is declared to be negligence, either by statute or by a valid municipal ordinance, the question of what acts do or do not constitute negligence is for determination by the jury. . . Under the rules above stated, it was for the jury to say whether such failure constituted negligence, as well as to determine the question of proximate cause, and the question as to whether the plaintiff could have avoided the consequences of defendant's alleged negligence." In *Charleston &c. Railway Co.* v. *Camp*, 3 *Ga. App.* 232 (59 S. E. 710), the second and third headnotes are as follows: "If a railway-train approaches a public crossing without giving signals and without checking its speed in accordance with the statute, the company may be held liable for an injury to a mule which, while being led across the track at the crossing, becomes frightened at the train, balks, jerks loose, and is run over a few feet below the crossing." "It not appearing that the plaintiff's attempt to take the mule across the track ahead of the train was, under the circumstances, as a matter of law, so negligent as to amount to a failure to exercise ordinary care, the court did not err in overruling the demurrer to the petition." In the case of *Seaboard Air-Line Ry. Co.* v. *Sarman*, 38 *Ga. App.* 637 (144 S. E. 810), this court held that a father could recover damages because of the death of his child caused by collision of a train and an automobile in which the child was riding with a person other than its parents, even though the driver of the automobile went upon the railroad-track when his view was obstructed by a building and "without making some effort to detect the approach of the train."

In the case under consideration the petition does not show the deceased was guilty of such negligence as would amount to lack of ordinary care, for it shows that he had ample time to cross when he undertook to do so, it being alleged the train was then from 150 to 175 yards away, and that he would have done so had it not been for the unforeseen intervention. We have carefully examined the cases cited by plaintiff in error, and find that they are differentiated by their facts from the case under consideration. The instant case is entirely different from those cases in which the injured person deliberately stepped directly in front of a fast moving train or street-car, or attempted to cross the track when the train was much nearer than the train in the instant case, or went on the track from behind a blind without knowing what was on the track. The deceased in the instant case saw the train, and (according to the petition) knew that he had ample time to cross the track, did not know that he would stall on the track, and had a right to assume that if he did stall with the train at that distance, the engineer, having time and space to stop the train, would, on seeing him stalled on the track, stop the train and avoid injury to him. There is nothing in the petition to show that the deceased knew, at the time he attempted to cross the track, that the engineer was not looking ahead. The petition shows that the engineer was not looking ahead, but not that the deceased knew this fact. If the engineer was not looking ahead as he approached the crossing, he was violating a statute and was negligent per se. If he was looking ahead he could have seen the deceased stalled on the track, and, if so, his conduct in rushing the train upon him and killing him when he could, according to the allegations of the petition, have stopped the train, was gross and wanton negligence. The petition does not allege wanton and wilful negligence in those terms, yet a petition will be construed according to the particular acts alleged, and not by the characterization put upon them by the pleader in the nature of a conclusion; and if the defendant company, through its servant, could have stopped the train after it knew that the deceased was stalled on the track and had reason to believe that he could not move, and yet refused to stop it and ran ahead with a reckless disregard for human life, then the plaintiff would be entitled to recover, irrespective of whether the deceased was guilty of contributory negligence or not. See *Central of Ga. Ry. Co.* v. *Moore,* 5 *Ga. App.* 562 (2) (63 S. E. 642).

Should not the jury say whether the engineer did or did not see the deceased stalled on the track, and whether he could or could not have stopped the train and avoided killing him? It is dangerous to digress too far from the fundamental principle that questions of fact are for the jury. Was the proximate cause of the injury the failure of the engineer to see the deceased when he was on the public road and within fifty feet of the railroad crossing? Was it the failure of the engineer to stop the train after he saw the deceased stalled on the track and when he had time and space to stop the train? Was it the running of the train at forty miles an hour over a public-road crossing? Was it the failure of the engineer to slow the speed of the train and give the deceased more time to start his automobile or to recover his composure and jump out of it? Was it a lack of ordinary care for the deceased to try to start his automobile and thus endeavor to save the life of himself, his companion, and possibly the lives of the passengers on the train? Did the deceased ordinarily have time to get across with the train 200 yards away when he was within 20 feet of the crossing? Did he ordinarily have time to start his automobile after he was on the track with the train between 150 and 175 yards away? Was the deceased so excited and frightened with the train rushing down upon him that he could not jump from his car or start it, and would the ordinary man have been excited and have lost his composure under such circumstances? Are these questions of law, for the court, or questions of fact for the jury? Questions as to diligence and negligence, including contributory negligence, and what negligence constitutes the proximate cause of the injury complained of, and whether the injured party exercised ordinary care and diligence to avoid the consequences of the alleged negligence of the defendant, are questions peculiarly for the jury, such as this court will decline to solve on demurrer, unless such questions appear palpably clear, plain and indisputable. See, in this connection, *Meriwether County* v. *Gilbert*, 42 *Ga. App.* 501 (3) (156 S. E. 473), and cit. Such questions do not appear palpably clear, plain and indisputable in the instant case, and the trial judge properly overruled the demurrer to the petition.

*Judgment affirmed. Broyles, C. J., concurs. Bloodworth, J., absent on account of illness.*