## 1423.  CENTRAL OF GEORGIA RAILWAY COMPANY
### v. MOORE, alias STRAWHAND.

1. The petition is construed as presenting an action based, not on negligence, but on wilful and wanton acts of the defendant's engineer.
2. Contributory negligence is not a defense to an action based solely on wilful and wanton acts of the defendant by which he has recklessly or intentionally injured the plaintiff.
3. The fact that one suing for a diminution of his earning capacity through an injury occasioned by the defendant was, previously to the time he was injured, a tramp is material not only on the question of his credibility as a witness, but also in measuring his damages.
4. The case turns solely upon the question as to whether the plaintiff's injuries were inflicted by the defendant's agents wilfully and wantonly; and this issue should be presented to the jury unconfused with other issues.

Action for damages, from city court of Albany—Judge Crosland. September 19, 1908.

Argued December 9, 1908.—Decided February 9, 1909.

*Wooten & Hofmayer, Cruger Westbrook,* for plaintiff in error.

*J. C. Smith, W. R. Smith, J. H. Hall, Hendricks & Christian,* contra.

Powell, J.   Moore, alias Strawhand, recovered a verdict against the railway company in a suit for personal injuries; and to the overruling of a motion for a new trial the latter excepts.   The trial was lengthy, the record is voluminous; indeed we find that a great deal of surplusage has been lugged in.   The plaintiff's action was brought, not on account of the defendant's negligence, but because the defendant inflicted a wilful and wanton injury upon him. The petition clearly discloses this.   It alleges, that the plaintiff was en route from Jacksonville, Florida, to Macon, Georgia; that at Albany he stopped over for a few days; that he met a party of friends and took a few drinks of whisky; that he decided to take a walk out westward from Albany, along the tracks of the defendant company; that when he was about two miles out of the city he felt weak, being at the time ill with chills and fever, and, having taken a few drinks and suddenly becoming faint, sat down on the end of one of the cross-ties, and, while sitting thus, lost consciousness, and, while he was in this condition, a passenger train came along, hit and severely injured him.   It is alleged that, approaching this point, the track is straight for twenty-five miles.   The particular wrongful act by which the defendant is charged with liability is alleged as follows:   "Notwithstanding the brightness of the day and that there were no obstructions whatever upon the track of the defendant, and that it was straight and the train was going up-grade, and the engineer of the defendant company saw the plaintiff at ample distance to have checked and stopped the same perfectly still many hundred yards before he reached defendant, and seeing that your petitioner, by reason of his condition as above set forth, was off his guard and not conscious of the approaching danger; that he wilfully and wantonly allowed the engine to run at the high speed of sixty miles per hour until within a few feet of your petitioner, when he gave one blast of the whistle, but did not reverse his engine or check his speed, notwithstanding your petitioner did not hear the blast of the whistle and when it was blown remained in a perfectly motionless condition and in the condition and position above described and set forth, the said engineer permitted his train, without any efforts on his part, to collide with your petitioner with such force as to whirl him thirty feet from the place where he was sitting, and inflict upon him the injuries hereinafter set forth."   Nowhere in the petition is mere negligence charged; throughout

the whole of it the defendant's acts are characterized as "wilful and wanton." While a petition will be construed by the particular acts alleged, and not by the characterization put upon them by the pleader (see *Seaboard Air-Line Railway* v. *Shigg*, 117 *Ga.* 454, 43 S. E. 706), it is nevertheless perfectly patent, from an examination of the whole petition in the present case, that the action is based, not on negligence of the defendant, but solely on its wilful and wanton conduct, alleged in the language quoted above. It is true that by an amendment to the petition the plaintiff set up that the public, with the knowledge of the defendant, were accustomed to walk along the tracks of the company at the point where the injury occurred, and that there was a much-used private crossing near by, but no negligence growing out of these facts is set up. These things might have been material if the contention had been that the defendant's agents ought to have anticipated the presence of the plaintiff, but the allegation is direct and unequivocal that the engineer in charge of the train did in fact see the plaintiff sitting on the cross-tie. Under the evidence, the question whether it was a wilful and wanton injury was equally sole and dominant. The engineer admitted seeing the man on the cross-tie in plenty of time to have stopped the train if he had not expected him to get off voluntarily. The plaintiff's own statements as to his intoxication are so equivocal as to amount practically to an admission of the fact; and all the circumstances demand a finding that he was guilty of contributory negligence. In fine, under neither the pleadings nor the evidence should the plaintiff have recovered, unless a wilful and wanton injury appeared. Hence all the pleadings and all the evidence which bore only upon the question as to whether the defendant's agents ought to have anticipated the plaintiff's presence were surplusage and immaterial to the issue.

2. Complaint is made that the court charged the jury that if the plaintiff was injured by "wilful and wanton negligence" of the defendant (we disapprove the use of the expression; for wilfulness and wantonness are so far the opposites of negligence as to make the expression "wilful and wanton negligence" misleading, though it is frequently employed by many of our best jurists and law-writers), he would be entitled to recover irrespective of whether he was guilty of contributory negligence or not. We understand this to be the law. It is so stated in practically all the text-books on

the subject, and is fully recognized by the Supreme Court of this State and by this court. See Shearman & Redfield on Negligence, §§ 64, 100, 483; Thompson on Negligence, §206; *Central R. Co.* v. *Newman,* 94 *Ga.* 560 (21 S. E. 219) ; *Central R. Co.* v. *Denson,* 84 *Ga.* 774 (11 S. E. 1039). The liability is a harsh one, but it is just, where the facts of the case warrant it. The court, in charging the jury upon the subject, should make it plain that it is never applicable unless the defendant's conduct was such as to evince a wilful intention to inflict the injury, or else was so reckless or so charged with indifference to the consequences, where human life or limb was involved, as to justify the jury in finding a wantonness equivalent in spirit to actual intent. It is not the doctrine that is harsh or unjust, but only the liability of its being misapplied that makes it seem so.

3. The defendant sought to show, by cross-examination of the plaintiff and otherwise, that he had no fixed or regular employment, that for several months prior to his injury he had been traveling about from place to place and from State to State, without any occupation,—in short, that he was a common tramp. Exception is taken to the following charge of the court, given in connection with instructions to the jury on the subject of the measure of damages: "Right here I deem it proper to call to your attention that there has been some testimony introduced before you as to the previous work that the plaintiff in this case may or may not have done, as to his movements prior to the trial of this case, in various States, as to what he did, or did not do there. Some remarks have been made in argument before the jury as to the plaintiff being a tramp. I charge you that all these things should not be considered by you in any other way than that you may consider all the evidence as affecting the credibility of the plaintiff as a witness; if you believe it does affect it, more or less, you have a right to consider it as bearing upon that point, and as that might bear upon the question of his capacity to labor and earn money; but if you believe, under the law and evidence in this case of course, that this plaintiff is entitled to recover, it would not matter whether he is a tramp or not, as to what his previous character may or may not have been. The only bearing that the evidence introduced before you should have is as affecting the credibility of the witness; but if you believe that he is entitled to recover, as I said before, under the law and

evidence of the case, his character could not affect it at all; he would be entitled to recover just as much if he were a tramp as if he were a man a great deal different." This, of course, was an erroneous instruction, and we are of the opinion that it likely did the defendant great prejudice. Comparing this extract with the rest of the magnificent and comprehensive charge of the court, we are sure—and we would be so even if we were not also personally acquainted with the unusual ability of the trial judge—that the court did not mean to convey the impression which the language palpably conveys. What the court was trying to impress upon the jury was that if the plaintiff had suffered a wrong at the hands of the defendant, he was entitled to have that wrong properly redressed, though he were a tramp, no less than if he were a man of wholly different character. What he said was that he would be "entitled to recover *just as much* if he were a tramp as if he were a man a great deal different." Frequently we disregard slips of the tongue, on the ground that, under the context, they could not naturally mislead the jury. In the present case an examination of the context does not relieve the error; indeed, by an inspection of another portion of the record, we find that there had been a colloquy between court and counsel upon this very subject, and what is there reported tends to emphasize the injury to the defendant.

4. There are many other assignments of error in the record, but we need not discuss them or pass upon them. In the light of our view of the evidence and our opinion that there ought to be a new trial in the case, the other questions presented are immaterial. The plaintiff's right of recovery turns solely on the question as to whether the defendant's engineer acted wilfully and wantonly, that is to say, in intentional or reckless disregard of human life, by not giving any warning and by allowing the engine to run on and strike the plaintiff whom he saw sitting in his intoxicated condition (for clearly he was intoxicated), helpless on the cross-tie in the way of the rapidly moving train. If the defendant's engineer did this, if he acted in this spirit and not in simple carelessness or bad judgment, the plaintiff ought to recover such damages as he can legally show to the satisfaction of the jury; otherwise he ought not to recover at all. On the next trial the issues ought to be much simplified; indeed one of the considerations impelling us to reverse the judgment now is that we feel that the jury were

probably confused by the large number of immaterial matters that were presented for their consideration on the trial.

*Judgment reversed.*