28306. SOUTHERN GROCERY STORES INC. *et al.* v. HERRING.

DECIDED SEPTEMBER 28, 1940.

*Jones, Powers & Williams,* for plaintiffs in error.
*G. Eugene Ivy, Irving S. Nathan,* contra.

BROYLES, C. J.  Henry Herring sued Robert E. Chapman and Southern Grocery Stores Inc. to recover damages for an alleged tort.  The court overruled the defendants' general demurrer and grounds 2 and 3 of their special demurrer to the petition, and both defendants excepted to that judgment.  By paragraph, the substance of those parts of the petition necessary to be considered in determining the questions at issue is as follows:  4.  On July 15, 1939, the plaintiff and other employees of Southern Grocery Stores Inc. went on a strike "upon the refusal of . . Southern Grocery Stores Inc. to sign a . . contract with his union, covering wages, hours, and working conditions."  5.  On or about July

25, 1939, "plaintiff was walking on the public sidewalk in front of a store belonging to . . Southern Grocery Stores Inc., located at 341 Peters Street, S. W., Atlanta, Georgia, and was carrying a sign calling the attention of the public to the strike and refusal of the Southern Grocery Stores Inc. to sign a contract with his union, and was causing no disturbance while doing this legal picketing." 6. At said time Robert E. Chapman was the manager of said store. 7. Chapman's duties as such manager were "in general to supervise and operate said store, obtain business, and further the interest and welfare of his employer." 8. While plaintiff "was picketing in front of said store . . Chapman, acting in the scope of his duties as manager of said store and in behalf of Southern Grocery Stores Inc., and in and about its business, in an effort to deter plaintiff from picketing . . said store, placed large quantities of black pepper on the sidewalk and deliberately swept same into the face of the plaintiff, and also poured out large quantities of ammonia on said sidewalk, so that the same would get into the eyes, lungs, and nostrils of the plaintiff." 9. That as a result of "the wilful and malicious conduct of . . Chapman, the black pepper and ammonia entered the plaintiff's eyes, nostrils, and lungs, causing an irritation and infection of plaintiff's eyes, nostrils, and lungs, and causing plaintiff to endure excruciating pain and suffering." 10. That all of the injuries sustained by plaintiff are permanent in character. 11. That Chapman, in the perpetration of the above-described wilful and malicious wrong against the plaintiff, "was in the discharge of his duties of his said master and acting in furtherance of his employer's business, . . and was acting in the course of and within the scope of the business of the Southern Grocery Stores Inc." 12. That the plaintiff did nothing, other than as stated herein, to provoke the wanton attack made by the said Chapman. 13. That the injuries and damages sustained by the plaintiff "were the proximate and direct result of the wrongful conduct of the defendants." 14. Plaintiff claims "punitive and exemplary damages for this wanton and malicious attack. . ."

The defendants' demurrer to the petition is substantially as follows: 1. The petition sets out no cause of action. 2. Defendants demur specially to paragraphs 4 and 5 and to each allegation of each paragraph separately, for that the same are irrelevant and

immaterial to any cause of action alleged. 3. Defendants demur to paragraphs 8, 9, 10, and 11 of plaintiff's petition and to each allegation thereof separately, and move to strike the same; for that the same are conclusions of the pleader, unsupported by sufficient allegations of fact, and are irrelevant and immaterial to any cause of action alleged, and are too vague, indefinite, and uncertain; and it does not appear how or wherein it was any part of the duty of Chapman to undertake to deter plaintiff from picketing the store, or to use the methods alleged in any effort to so deter him; and it does not appear how much pepper and ammonia were put on the sidewalk; and it does not appear that there was anything to prevent plaintiff from seeing that Chapman was putting the pepper and ammonia on the sidewalk and avoiding the consequences thereof by ordinary care; and that the allegations that the ammonia and pepper entered plaintiff's eyes and nostrils and lungs, causing irritation and infection and pain and suffering, do not show how long said irritation or suffering continued, or the extent thereof; and it does not appear how said alleged act of Chapman "was in the discharge of his duties or in the furtherance of his employer's business, or in the course or within the scope of that business."

We are satisfied that paragraphs 4 and 5 of the petition are not "irrelevant and immaterial," as charged in paragraph 2 of the demurrer. Neither are paragraphs 8, 9, 10, and 11 subject to that part of paragraph 3 of the demurrer attacking each of them because it sets forth mere conclusions of the pleader and is indefinite, uncertain, immaterial, and irrelevant. Neither was it necessary for the plaintiff to state in his petition how much ammonia and pepper were put on the sidewalk, or how much of those substances entered plaintiff's eyes, nostrils, and lungs, or how long the alleged irritation and suffering continued, or the extent thereof. In connection with this last conclusion see *Fuller* v. *Inman*, 10 *Ga. App.* 680 (3), 693 (74 S. E. 287), where the functions of special demurrers are discussed; also *Georgia-Alabama Coca-Cola Bottling Co.* v. *White*, 55 *Ga. App.* 706 (3), 712 (191 S. E. 265). Those parts of paragraph 3 relating to the doctrine of respondeat superior and to the avoidance by the plaintiff of Chapman's alleged tortious acts by the exercise of ordinary care will be sufficiently considered when we come to pass upon the general demurrer to the petition.

Counsel for the plaintiffs in error contend, under their general

demurrer: (1) that neither of the defendants is liable, because the petition shows that "plaintiff could have avoided the consequences of Chapman's acts by the exercise of ordinary care;" and (2) that there could be no recovery against the corporate defendant because "the facts alleged do not show that Chapman, in committing the acts complained of, was acting within the scope of his employment." We find nothing in the petition to support the first contention, and certainly can not hold as a matter of law that the plaintiff could have avoided the consequences of Chapman's acts by the exercise of ordinary care. It may not be amiss to state in this connection, however, that the petition avers that Chapman's acts were "wilful and malicious," and that in such cases "the mere failure of the plaintiff . . in the exercise of ordinary care will not defeat a recovery." *Central Railroad & Banking Co.* v. *Newman,* 94 *Ga.* 560 (2) (21 S. E. 219); *Tice* v. *Central of Ga. Ry. Co.,* 25 *Ga. App.* 346 (2 *e*) (103 S. E. 262).

Counsel's next contention concerns the most difficult question presented by the record, and deserves careful consideration. The Code, § 105-108, reads in part: "Every person shall be liable for torts committed by his . . servant, by his command or in the prosecution and within the scope of his business, whether the same shall be by negligence or voluntary." And "this rule applies as well where the master is a corporation as where he is a private individual." *Central of Ga. Ry. Co.* v. *Brown,* 113 *Ga.* 414 (38 S. E. 989; 84 Am. St. R. 250); *Daniel* v. *Excelsior Auto Co.,* 31 *Ga. App.* 621, 623 (121 S. E. 692), and cit. "The expressions, 'in the scope of his business,' or 'in the scope of his employment,' or similar words, have sometimes been given too narrow a meaning. A master rarely commands a servant to be negligent, or employs him with the expectation that he will commit a negligent or wilful tort; but if the act is done in the prosecution of the master's business, that is, if the servant is at the time engaged in serving the master, the latter will be liable. . . But for a tort committed by the servant entirely disconnected from the service or business of the master, the latter is not responsible under the doctrine of respondeat superior, although it may occur during the general term of the servant's employment." *Fielder* v. *Davison,* 139 *Ga.* 509, 511 (3) (77 S. E. 618). The following rule, stated in *Savannah Electric Co.* v. *Hodges,* 6 *Ga. App.* 470 (65 S. E.

322), is but a corollary of the general rule just referred to: "If a servant steps aside from his master's business, for however short a time, to do an act entirely disconnected from it, and injury results to another from such independent voluntary act, the servant may be liable, but the master is not liable." Though a tort committed by a servant upon another be wilful, entirely unjustified, and done in great anger, the master is nevertheless liable in damages therefor if it be committed "by his command or in the prosecution and within the scope of his business." *Gomez* v. *Great Atlantic & Pacific Tea Co.,* 48 *Ga. App.* 398, 399 (172 S. E. 750), and cit. See, in this connection, *Broome* v. *Primrose Tapestry Mills,* 59 *Ga. App.* 70, 74 (200 S. E. 506), and cit.; *Great Atlantic & Pacific Tea Co.* v. *Dowling,* 43 *Ga. App.* 549 (159 S. E. 609); *Seaboard Air-Line Ry.* v. *Arrant,* 17 *Ga. App.* 489 (2 *a*) (87 S. E. 714).

The picketing of the store in the instant case appears to have been legal. *Jones* v. *Van Winkle Gin & Machine Works,* 131 *Ga.* 336 (4) (62 S. E. 236, 17 L. R. A. (N. S.) 848, 127 Am. St. R. 235). It was Chapman's duty "to supervise and operate said store, obtain business, and further the interest and welfare of his employer." Picketing the store, as alleged in the petition, naturally tended to reduce the business done by the store and affect deleteriously the interest and welfare of Chapman's employer. If, as alleged in paragraph 8 of the petition, Chapman threw pepper on the sidewalk and swept it into the plaintiff's face, and also poured ammonia on the sidewalk, "in an effort to deter plaintiff from picketing the said store," said acts were done to protect the business he was managing and to "further the interest and welfare of his employer." "Except in plain and palpable cases, it is for the jury to decide whether the servant was acting within the scope of and in furtherance of his employment when he committed the tortious act in question." *Gomez* v. *Great Atlantic & Pacific Tea Co.,* supra, and cit. Under the foregoing rulings, we think that the petition stated a cause of action against both defendants, and that none of the court's rulings upon the demurrer was error.

*Judgment affirmed. MacIntyre and Gardner, JJ., concur.*