1. Where in a civil case the judge, in stating the contentions of the parties, fully and fairly submitted the issues raised by the pleadings, his failure, in the absence of a request, to instruct the jury upon a contention of one of the parties not raised by the pleadings, though supported by some evidence in the record, is not cause for a new trial.
2. It is manifestly without error for the judge, in calling the jury's attention to the allegations of a petition, to do so in the language of the pleader.
3. The evidence was sufficient to authorize the verdict.
 No. 15954. OCTOBER 14, 1947.
Will H. Collins filed an action against Nathan Williams in the Superior Court of Grady County. The purpose of the suit was to establish a boundary line between the lands of the plaintiff and the defendant, as coterminous landowners, from a point near the center of their respective lots east to their common corner. In the brief filed for the defendant in error, it is conceded that the boundary line between the lots involved has become fixed and established from a point near the center of the lots west to the original west line of the lots by the location of a fence erected many years ago, which has, during the years, been acquiesced in by the parties and their predecessors in title. The petition alleged that the plaintiff was the owner of lot 187, in land district 18 of Grady County, and that the defendant was the owner of lot 174 in the same district and county, located just north of and adjacent to the plaintiff's lot; that, for the past twenty-five years and longer, the boundary line between their respective lots of land *Page 711 
had been well defined, recognized, and acquiesced in by the parties and those under whom they claim, and that their boundary line had been evidenced by a fence beginning at the west line of the lots and extending east to a point near the center of the lots where the fence turned south on the plaintiff's lot 187, and then by a well-defined line extending on east from the northeast corner of the fence to the east line of the lots. For more than twenty-five years the plaintiff and his predecessors in title had been in actual possession of that part of lot 187 south of the fence, and during the same period of time he and his predecessors in title had sold turpentine timber to the line claimed by him, which passed through the wooded portion of the lot on the east side thereof. The defendant and his predecessors in title, during the same period of time, had been in actual possession of that part of lot 174 north of the fence and had likewise sold turpentine timber to the line claimed by the plaintiff on the east side of his lot. Each during that period of time had recognized and acquiesced in the line claimed by the plaintiff as the true boundary line between the two lots. The defendant had recently had a line run from a point about twenty-five or thirty feet south of the northeast corner of the fence (the point near the center of the lots) to a point on the east line of lot 187, about one hundred feet south of the recognized northeast corner of lot 187, and was contending that this is the true boundary line between the plaintiff and the defendant with respect to that part of their lands, and it was his purpose to erect a fence along this line.
Besides for process, the plaintiff prayed that the line as claimed by him be decreed the true boundary line between the respective lands of the parties, and that the defendant be restrained from erecting a fence on the line claimed by him, which, as the plaintiff claims, is south of the correct boundary line.
The defendant, by his answer, admitted that the plaintiff was the owner of lot 187, which is adjacent to his lot 174 on the south. He further contended by his answer: that the southeast corner of his lot 174 and the northeast corner of plaintiff's lot 187 is a well-defined and recognized corner, "there being a concrete marker at said corner which has been there for several years and has been recognized as the true corner by both the plaintiff and defendant, and that in the sale of timber each has recognized a *Page 712 
line going west from said corner through uncleared land to the pasture fence of the plaintiff as representing the true line between lots nos. 174 and 187;" that during December, 1945, the plaintiff and the defendant caused the boundary line between their respective lands to be surveyed and located by the county surveyor; and that the true and correct boundary line was then found to be a straight line extending west from the concrete corner to the plaintiff's pasture fence, which is the line claimed by the defendant.
Will H. Collins, as a witness in his own behalf, testified in substance: He was sixty-eight years of age. He and his family had owned lot 187 for at least seventy years. His father owned it until his death in 1907, and then the plaintiff and his brother, D. R. Collins, acquired it. He had since purchased his brother's interest. As far back as the plaintiff could remember, Mose Maxwell owned lot 174. A Mr. Lewis purchased it from him about 1910 and conveyed it to the defendant in 1920. The plaintiff's father and Mose Maxwell built a rail fence beginning at the northwest corner of lot 187 and the southwest corner of 174, and extending east along the original line between the two lots for about 1500 feet nearly half the distance across the lots, and kept it up as a party fence. The dividing fence and a line extending from the northeast corner of the dividing fence to the east line of the lots, which was marked with blazes, was recognized as the dividing line between the two lots, both by Mr. Maxwell and the plaintiff's father until the death of the latter in 1907. He and Mr. Lewis then recognized it as the dividing line until Lewis sold his lot to the defendant in 1920. The fence line was always recognized by the defendant until just before this litigation was filed. The plaintiff and his brother, D. R. Collins, had the lines around lot 187, and the lot adjoining it on the west, surveyed in about 1910. He was not present when the survey was made, but the lines then marked out as between lots 187 and 174 followed the fence from the northwest corner of 187 east to the northeast corner of the fence and then on east to the original corner of the lot. There was no controversy about the dividing line between the lots involved until a short time before this suit was filed. The defendant wanted to build a fence on the line from the northeast corner of the old fence through the woodland to the corner between *Page 713 
the two lots. The defendant cut a right-of-way and staked the line from the northeast corner of the fence to a point within a distance of from 50 to 100 yards west of the original corner and then stopped, evidently finding that it was not going to run out at a concrete post set in the original line of 187. The defendant then requested that the line be surveyed, stating that he did not think the line was correct, and that he did not know where it was. He (witness), the county surveyor (Mr. Schinkel), and the defendant surveyed a line from the concrete post on the east original line of lot 187 to a point on the west line of the lot 115 feet south of the northwest corner. The surveyor then ran another line, after he had done some "figuring" from the concrete post to the northwest corner of lot 187. The witness did not agree to the survey, and told the surveyor and the defendant that he was not satisfied with the line. The concrete post set in the east line of lot 187 was placed there some years ago by county surveyor Reagan when he was surveying land east of lot 187, but the witness had never recognized it as the corner of his lot. The line between his land and that of the defendant from the northeast corner of the old fence to the corner of the two lots was a well-defined line and had several old blazes on it then. He sold some pulpwood timber five or six years before on his lot to a Mr. Crew, and marked the trees which were to be cut up to the line he claimed. He denied that he had pointed out the dividing line to Mr. Crew's timber cutters as one extending west from the concrete post. He also denied that the blazes on the line claimed by him had been recently made.
Bob Cook testified for the plaintiff, in substance as follows: He was seventy-three years of age and had lived near the lots involved all of his life. Mose Maxwell, who then owned lot 174, and the father of the plaintiff, who then owned lot 187, built a rail fence from the southwest corner of lot 174 and the northwest corner of 187, which extended east along the original line between the two lots to a point about half way across the lots. It was built as a division fence between them and was kept up as a party fence during their lifetime. He further testified: "There was a line marked out extending from the northeast corner of said fence east to the east lot line. I never heard Mr. Maxwell or anyone else owning lot 174 make any claim to any part of the lands south of this dividing line." *Page 714 
Van Collins, for the plaintiff, testified in substance: He was fifty-one years of age, and a son of D. R. Collins, deceased. He was familiar with the lines around lot 187. He helped run out the lines around that lot and lot 186 in 1910 when a survey was made by county surveyor Vann. He was then fifteen or sixteen years of age. On being shown a copy of the survey and plat made by surveyor Vann, he said that it correctly represented the line between lots 187 and 174 as then run out. The old fence was found by the surveyor to be on the north line of lot 187, extending east from the northwest corner of the lot about half way across the lot. Had never heard of any dispute about the line along the fence. The owner of lot 174 cultivated down to the fence, and did not undertake to interfere with any part of the lot south of the fence. He had recently looked at the line between the two lots from the northeast corner of the fence to the original northeast corner of 187, and found blazes on the timber as it passes through the woods — "not very many of them but there are some."
The evidence for the defendant was in substance as follows: Nathan Williams testified in his own behalf: he notified the plaintiff that he desired to build a fence on the line between their respective lands; that it was his intention to begin the fence at the concrete post — the established corner between his lot 174 and the plaintiff's lot 187, and to extend the same west 1835 feet to the pasture fence. Mr. Collins advised him that he (Collins) did not know where the line was between the two lots, and that they should get the county surveyor to locate it for them, and the plaintiff requested him to get the surveyor for that purpose. The surveyor, the plaintiff, and the witness undertook to run the line west from the concrete post and a test line was first run. The surveyor then ran a line that went west from the concrete corner to the plaintiff's pasture fence, a distance of 1835 feet, and then on to the northwest corner of lot 187 and the southwest corner of 174. Mr. Collins at that time stated that he could hold the land on the inside of the enclosure irrespective of where the line might be, and he "realized as to that land plaintiff had the advantage." He then advised the plaintiff that he would insist on the line as located by the surveyor from the concrete corner to the pasture fence; that he had gone on the timbered land from the northeast corner of the plaintiff's pasture fence east to the east line of the *Page 715 
two lots, and there was no "marked or distinguishable" line between their respective lands. He did find two or three chops and blazes on trees, but they were not landmarks and had been recently cut on the trees. He sold the timber on his lot 174 in 1926 to a lumber company, and at the same time the plaintiff sold his timber to the same party, and the timber was cut "through and through cutting everything."
E. L. Reagan testified: He was county surveyor for Grady County until recently. Several years ago he ran some lines for the property owners east of lot 187 in the 18th district. He put down the concrete post along the east line of lot 187, and in his opinion it was a true corner. He found a tree on the line that he ran just east of the concrete post which had old landmarks on it. He did not run any line west of lot 187. He ran the line which established the concrete post corner for lot 187 on a variation of two degrees north thirty minutes east. Had surveyor Schinkel run the line between lots 187 and 174 on the same variation his line would have gone to the left (south) of the line located by him.
P. W. Schinkel testified: He was county surveyor for Grady County. N.W. Williams came to him to run a line from the concrete post on the east lot line of 187 and 174 to the northwest corner of lot 187. He understood both from Mr. Collins and Mr. Williams that they did not know where the original line between lots 187 and 174 was located. He ran a test line from the concrete post to a point on the west line of lot 187 one hundred and fifteen feet south of the northwest corner of the lot. He then did some "figuring" to get his bearing, and ran the line from the concrete post to the northwest corner of lot 187. When the line reached the Collins' pasture fence, it was 34.5 feet south of the northeast corner of the fence. He heard Mr. Collins make some complaint about the location of the line while it was being run. He was employed and paid by Mr. Williams to run the line. He examined the woodland from the northeast corner of the pasture fence to the east line of the lots, and there are no line marks distinguishable by chops or blazes on the trees that are considered line marks. He did see two or three blazes over the whole distance, but they were not landmarks, and appeared to have been recently made. There was "absolutely no line marked or designated anywhere through the woodland east of the northeast corner *Page 716 
of Collins' fence." He was not employed to establish the true line between the lots involved, but to run the line from the concrete post to the northwest corner of lot 187. He did not run his line on the same bearing which surveyor Reagan did when the concrete post corner was established, but it was his opinion that the line he ran was the true line.
Arthur Lewis testified: He was a son of the Mr. Lewis who formerly owned lot number 174. He lived on the land (lot 174) for four years, "around 1912 to 1915." He saw the concrete-post corner over on the east side of the lots, and it was his opinion that it was where the corner of the lots should be. He noticed some blazes on the line from the northeast corner of the fence to the east, but they did not appear to be old blazes. He was familiar with the dividing fence between the two lots in the northwest corner of lot 187. The fence was there when he lived on 174. He cultivated land down to the fence, but did not undertake to cultivate any land south of the fence.
George Sheppard and Johnny Nelms testified that they cut timber on the Collins land for Mr. Crew four or five years before. Each testified that Mr. Collins told them not to cut anything north of a line running west from the concrete post to the fence.
The plaintiff, being dissatisfied with a verdict for the defendant, filed a motion for new trial based on the usual general grounds, which was afterwards amended by adding five special grounds, and on the judgment overruling the motion as amended he assigns error.
1. Grounds 1, 2, and 4 of the amended motion complain of the failure of the court to instruct the jury on the law with reference to establishing a boundary line between coterminous landowners by oral agreement. In the brief for the plaintiff in error, it is contended that there was evidence which authorized, if it did not require, the jury to find that the father of the plaintiff in error, who at that time owned lot 187, and Mose Maxwell, who at that time owned lot 174, at least sixty years prior to the trial of the case in 1946, agreed on the dividing line between the two lots and jointly erected a fence nearly half way across the lots, and marked out the balance of the line; and that so long as Mr. Collins *Page 717 
lived the fence was maintained by both parties and the line recognized as the dividing line between the two lots. The pleadings, as the record shows, contain no allegations to the effect that the line in question had been established by agreement between the parties or their predecessors in title. Assuming that there is evidence in this record which would have authorized the judge to instruct the jury on that principle of law, still, in the absence of a timely request, his failure to do so was not error. The general rule is that a charge on legal principles must be adjusted to both the pleadings and the evidence. Southern Express Co. v. Newby, 36 Ga. 635 (5) (91 Am. D. 783); McDonald v. DeLaPerriere, 178 Ga. 54 (4) (172 S.E. 1); Smoot v. Alexander, 188 Ga. 203 (4) (3 S.E.2d 593);Jones v. Hogans, 197 Ga. 404, 412 (29 S.E.2d 568). This rule, however, is qualified when there has been evidence submitted, without objection, relating to the same cause of action, which could have been authorized by an amendment to the pleadings. Under such circumstances, in civil cases, the judge is authorized, but not required without request, to charge upon the issue thus made by the evidence. Jones v. Hogans, supra, and cases there cited. Therefore, in the absence of an appropriate request, a failure of the court in its charge to present to the jury a contention of one of the parties not pertinent to any issue made by the pleadings is not a cause for new trial, though supported by some evidence in the record. York v.Stonecypher, 181 Ga. 435 (182 S.E. 605). We are not, however, to be understood as holding in the instant case that the record contains any evidence which would have authorized the court, in any event, to charge on that question.
2. Special ground 3 complains because the court instructed the jury that the plaintiff contended that the dividing line from the northeast corner of said fence to the east line of the lots was a well-defined line. What the court actually said, while stating the contentions of the parties to the jury, was this: "The plaintiff alleges in his petition that he and those under whom he claims have been in actual possession of the land south of the dividing fence for more than twenty-five years; that the dividing line from the northeast corner of said fence to the east line of said lots is a well-defined line." The charge complained of is in almost the exact language of the pleader, and the criticism made of it is manifestly without merit. *Page 718 
3. In special ground 5, which is an elaboration of the general grounds, the plaintiff in error contends that the court should have granted a new trial because the evidence demanded a verdict for the plaintiff. In our statement of the facts we have endeavored to set out fully the testimony, and we think that it is sufficient to say that there was ample evidence to support the finding of the jury, and their verdict, having the approval of the trial judge, will not be disturbed by this court.
Judgment affirmed. All the Justices concur, except Wyatt, J.,who took no part in the consideration or decision of this case.