### 21354. CARR v. JOHN J. WOODSIDE STORAGE COMPANY, INC., *et al.*

CANDLER, Justice. Mrs. Carr sued John J. Woodside Storage Company, Inc. and Transport Insurance Company for damages in the Superior Court of McDuffie County, alleging that a driver of a truck owned by Woodside while operating it for

the owner and in the prosecution of its business wrongfully killed her 18 year old son when the truck he was operating collided with a small car her son was driving. The case resulted in a verdict for the defendants, and the Court of Appeals, with Judge Townsend dissenting, affirmed a judgment refusing to grant the plaintiff a new trial on her amended motion therefor. *Carr v. John J. Woodside Storage Co.*, 103 Ga. App. 858 (120 SE2d 907). Mrs. Carr applied to this court for the writ of certiorari, assigning error on several different rulings the Court of Appeals made and her application was granted. *Held:*

1. On the trial and before the jury retired to consider this case, the plaintiff Mrs. Carr requested the court in writing to charge the jury as follows: "Gentlemen of the jury, the plaintiff contends that the defendant's agent, John Albert Smith, committed wilful and wanton negligence through driving the defendant's truck at a fast and illegal rate of speed while intoxicated, and through failing to keep a proper lookout ahead, and through failing to reduce speed on the approach to an intersection, and through failure to apply the brakes in time to avoid colliding with the automobile driven by her son. I charge you, Gentlemen of the jury, that if from the evidence you find that John Albert Smith was guilty of wilful and wanton negligence and that such wilful and wanton negligence resulted in the homicide of plaintiff's son, then and in that event, even though you might find that plaintiff's son committed negligence, such negligence on the part of her son would not defeat a recovery by plaintiff in this case." As to the form and time when the request was made no question is raised but it is strongly argued that the evidence in this case did not require the giving of such a charge. The trial judge declined to give the charge so requested and the Court of Appeals held that he committed no error in failing to do so. Respecting this, we think the Court of Appeals erred. It was unanimously held in *Central Railroad & Banking Co. v. Newman*, 94 Ga. 560 (2) (21 SE 219), "When the defendant's wrongful act was not only a failure in diligence but was wilful or so grossly negligent as to be wanton and reckless, the mere failure of the plaintiff or his servant in the exercise of ordinary care will not defeat a recovery." An opinion prepared for the Court of Appeals by Judge Powell in the case of

*Central of Ga. Ry. Co. v. Moore,* 5 Ga. App. 562, 564 (63 SE 642), employs this language: "Complaint is made that the court charged the jury that if the plaintiff was injured by 'wilful and wanton negligence' of the defendant . . . he would be entitled to recover irrespective of whether he was guilty of contributory negligence or not. We understand this to be the law. It is so stated in practically all the text-books on the subject, and is fully recognized by the Supreme Court of this State and by this court [citations omitted]. The liability is a harsh one, but it is just, where the facts of the case warrant it. The court, in charging the jury upon the subject, should make it plain that it is never applicable unless the defendant's conduct was such as to evince a wilful intention to inflict the injury, or else was so reckless or so charged with indifference to the consequences, where human life or limb was involved, as to justify the jury in finding a wantonness equivalent in spirit to actual intent." In *Tice v. Central of Ga. Ry. Co.,* 25 Ga. App. 346 (103 SE 262); and *Southern Grocery Stores v. Herring,* 63 Ga. App. 267 (11 SE2d 57) similar rulings were also made.

Before relating any of the evidence which we find in the record, it is entirely proper that we cite certain provisions of law which are applicable to such requested charge, they being, namely, (1) "No person shall drive a vehicle on a street or highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. In every event speed shall be so controlled as may be necessary to avoid colliding with any person, vehicle, or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care." *Code Ann. Supp.* § 68-1626 (a). "The driver of every vehicle shall, consistent with the requirements of subdivision (a) [of § 68-1626] drive at an appropriate reduced speed when approaching and crossing an intersection." *Code Ann. Supp.* § 68-1626 (3c); (2) "Where the total gross combined weight of trucks or truck-tractors and trailers and load in pounds is between 10,000 and 16,000 pounds the maximum speed shall not exceed 50 miles per hour." *Code Ann. Supp.* § 68-1626 (3); "It is unlawful and punishable as provided in § 68-9927 for any person who is under the influence of intoxicating liquor to operate or drive

any vehicle [on the streets and highways of this State]." *Code Ann. Supp.* § 68-1625 (a) ; The driver of an automobile must keep a vigilant lookout ahead for traffic. *Eubanks v. Mullis,* 51 Ga. App. 728 (181 S. E. 604).

Respecting the request to charge in the instant case, the jury was fully authorized to find from the evidence: The defendant John J. Woodside Storage Company, Inc., was during all times mentioned in the amended petition a motor common carrier for hire. The defendant Transport Insurance Company carried its public- liability insurance. John Albert Smith, a negro man, was employed by the defendant Woodside as a driver of one of its trucks and at the time of the collision complained of in this case was driving Woodside's truck in the course of his employment and in the prosecution of his employer's business. He had transported a load of merchandise from Atlanta to Augusta, Georgia, on Saturday, June 13, 1959, and was returning over State Highway 12 on the following day. His empty truck weighed 11,590 pounds. Smith was alone in the truck. Between Thomson and Warrenton and at the intersection of State Highway 12 and the Wire Road there was a collision between the truck Smith was driving and a stripped-down Ford car which the plaintiff's son, age 18, was driving. The Carr boy was killed instantly. Smith was traveling west on State Highway 12 and Carr was traveling south on Wire Road when the collision occurred. The collision occurred about 3:30 p.m. Carr was about 4 feet on the pavement of the highway when the two vehicles collided. About 450 feet east of the intersection of State Highway 12 and the Wire Road and on the north side of the State highway which was to Smith's right there was a sign warning motorists of such intersection and Smith, the driver of Woodside's truck, testified that he noticed the sign but did not apply his brakes or reduce his speed before reaching the intersection. He however testified that he was not traveling more than 45 miles per hour at such time, but Martha Poole, the court reporter, testified that he had sworn on a previous hearing of the case that he was traveling 50 miles per hour at the time of the collision. Several witnesses estimated Smith's speed at from 60 to 70 miles per hour at the time of the collision. The evidence shows there were no skid marks on the pavement which the truck made before the impact. The

right front wheel of the truck was broken down when it finally stopped. After the collision the truck diagonally crossed the highway, went through some bushes or small trees, tore down a wire fence, went on up the hill where it crossed a ditch from 20 to 24 inches deep and 3 feet wide and then continued to go further on up in the field before it stopped. Two witnesses for the plaintiff testified that Smith, the driver of the truck, had been drinking some intoxicant at the time of the collision, one of these witnesses (Lindsey Reeves) testified that he (Smith) in his opinion had just recently taken a drink as he had a strong odor of an intoxicant on his breath. The boys who were in the automobile with Carr at the time he was killed testified that they had been riding with him during the afternoon of the collision. The foot brakes on his car were working perfectly. The three started to a nearby service station to get water for his radiator. In going there, they had to stop at a railroad crossing and his brakes were then in good condition and stopped his car normally when applied. They were traveling on Wire Road and approaching a stop sign on that road at the intersection of State Highway 12; two other cars had stopped in front of them. Carr applied his brakes and they had completely gone out on him and for that reason he was unable to stop. Carr was then traveling from 20 to 30 miles per hour. Carr passed the two cars which had parked in front of him to the left of them as there was no passing room to the right of them.

Johnny Pentecost, a witness for the defendants, testified that his car had stopped on Wire Road at the stop sign. No car was then between his car and the highway (State Highway 12). While so parked, the Carr boy passed his car to his left at a speed of about 30 miles per hour. His car was parked about 20 feet from the north edge of the paved part of the highway and he could see down the highway in the direction from which the truck was coming for a distance of about 400 yards. There was nothing between the truck and his car to keep the truck driver from seeing his car if he had been looking in that direction. It is not true (as the truck driver Smith testified) that he would have been unable to see his car until he was right even with the pumps at Radford's Service Station a few feet away from the intersection where the collision occurred. He also testified that Smith did not attempt to lessen

his speed at the intersection and that he was traveling not more than 60 miles per hour at the time of the collision. Several witnesses testified that Smith for a quarter of a mile from the intersection where the collision occurred could have seen a car on Wire Road for a distance of from 20 to 30 feet from the highway he was on if he had been looking forward toward the intersection. There is no evidence in the record which shows or tends to show that the foot brakes on Carr's automobile had not suddenly gone out on him or that he failed to exercise every available means to stop it after discovering that his brakes had gone out. The evidence shows that no car was so closely following the truck which Smith was driving that it would have been dangerous for him to have avoided the collision by suddenly stopping. At the place of the collision Smith could have prevented the collision by a slight turn to his left. Applying this evidence to the rules of law previously stated, we think and hold that the trial judge erred in failing to give the requested charge. A reckless and wanton disregard of consequences, evincing a willingness to inflict injury or produce death, may amount to wilfulness, although there is no direct proof of actual intention to inflict the injury or produce the death. *Central Railroad & Banking Co. v. Denson*, 84 Ga. 774 (11 SE 1039); *Western & Atlantic R. Co. v. Bailey*, 105 Ga. 100 (31 SE 547); and *Lowe v. Payne*, 156 Ga. 312, 316 (118 SE 924). In *Lowe's* case, supra, it was held: "But if the servants of the company were guilty of wilful and wanton negligence which resulted in the homicide of the person killed, then the negligence of the person killed, however gross, will not defeat a recovery of damages for such homicide by a plaintiff who is entitled under the law to sue therefor." It has been held by this court that where a timely written request to charge is made on a material and pertinent point, even though the requested proposition may be raised only by evidence introduced without objection and not by the pleadings, that such a request should be given in the exact language of the request and that it is reversible error not to do so. *Wooten v. Morris*, 175 Ga. 290 (4) (165 SE 626); *York v. Stonecypher*, 181 Ga. 435, 437 (182 SE 605); *Collins v. Williams*, 202 Ga. 710 (44 SE2d 799); *Smith v. Tippins*, 207 Ga. 262 (4) (61 SE2d 138); and *Redding v. State*, 214 Ga. 524 (4) (106 SE2d

5). As previously pointed out we think the evidence in this case would have authorized the jury to find that the driver of the defendant Woodside's truck was operating it on a public highway while under the influence of an intoxicant at the time of the collision; that he was operating it in violation of Rule 10 of the Public Service Commission which prohibits the driver of such a motor vehicle from so operating it when drinking to any extent; that he was at the time of the collision exceeding the speed limit for a vehicle having the weight of the one he was driving; that on seeing a sign warning him of an intersecting road he failed to apply his brakes and reduce the speed of his truck to an appropriate reduced speed when approaching and crossing an intersecting road, though he had seen a sign some 450 feet before reaching the intersection warning him of its existence; and that he failed to keep a lookout ahead for other traffic. In these circumstances we think the jury would have been authorized to find that Smith's conduct was such as to evince a wilful intention to inflict the injury which caused young Carr's death, or else was so reckless or so charged with indifference to the consequences, where human life was involved, as to justify the jury to find a wantonness equivalent in spirit to actual intent. This being our view of the case from the record, we think the requested charge was proper and should have been given in the language requested.

2. The remaining grounds alleged in the application for the writ of certiorari have been carefully examined and we have reached the conclusion that they do not constitute any reason for reversing the judgment complained of. This being true, the judgment rendered by the Court of Appeals is reversed only for the reasons stated in the foregoing division of the opinion.

3. Since the motion to dismiss the writ of certiorari on the ground that it was improvidently granted is without merit, it is accordingly denied.

*Judgment reversed. All the Justices concur, except Almand and Mobley, JJ., who dissent. Head, P. J., concurs specially.*

ARGUED OCTOBER 9, 1961—DECIDED October 24, 1961—
REHEARING DENIED NOVEMBER 10 AND NOVEMBER 21, 1961.

*Randall Evans, Jr.,* for plaintiff in error.
*Robert E. Knox, Fulcher, Fulcher, Hagler & Harper,* contra.

MOBLEY, Justice, dissenting. The trial judge, in my opinion, was correct in refusing to give the charge requested, as was held by the Court of Appeals, because the charge was argumentative, misleading, was not adjusted to the pleadings and evidence, and was not itself complete and perfect. *Lewis v. State*, 196 Ga. 755 (3) (27 SE2d 659); *Vinson v. Citizens & Sou. Nat. Bank*, 208 Ga. 813 (69 SE2d 866).

For the court to charge, as requested, that "the plaintiff contends that the defendant's agent, John Albert Smith, committed wilful and wanton negligence through driving the defendant's truck at a fast rate of speed while intoxicated, and through failing to keep a proper lookout ahead, and through failing to reduce speed on the approach to an intersection, and through failure to apply the brakes in time to avoid colliding with the automobile driven by her son," without any explanation of what constitutes wilful and wanton negligence (if there is such a thing as wilful and wanton negligence), and to follow that instruction with the charge that, "if from the evidence you find that John Albert Smith was guilty of wilful and wanton negligence, and that such wilful and wanton negligence resulted in the homicide of plaintiff's son, then in that event, even though you might find that plaintiff's son committed negligence, such negligence on the part of her son would not defeat a recovery by plaintiff in this case," implies and would lead the jury to believe that, if the enumerated acts of negligence were proved, then the defendant was guilty of wilful and wanton negligence, and the plaintiff could recover even though her son was negligent. The enumerated acts of negligence in and of themselves do not constitute wilful and wanton negligence but would be classified either as ordinary negligence as defined in *Code* § 105-201 or gross negligence as defined in *Code* § 105-203. The Code does not provide any degree of negligence known as "wilful and wanton negligence," and Jenkins, P. J., in *Blanchard v. Ogletree*, 41 Ga. App. 4 (152 SE 116), at page 7, quoting from 45 C. J. 1090 ". . . the words 'negligence' and 'wilfulness' are incompatible, and a cause of action sounding in ordinary negligence is one thing and one sounding in wilful misconduct is another," pointed out that wilful and wanton misconduct and gross negligence are not, in this State, regarded as synonymous, although it

has been held that gross negligence may be so accounted where the evidence indicates "that entire absence of care which would raise the presumption of conscious indifference" or that with reckless indifference the person acted with actual or imputed knowledge that the inevitable or probable consequence of his conduct would be to inflict injury. *Southern Ry. Co. v. O'Bryan,* 119 Ga. 147 (1) (45 SE 1000); *Southern Ry. Co. v. Davis,* 132 Ga. 812 (65 SE 131); *Harris v. Reid,* 30 Ga. App. 187 (117 SE 256); *Buffington v. Atlanta, B. & C. Ry. Co.,* 47 Ga. App. 85 (169 SE 756).

The majority opinion relies upon the ruling made in *Central of Ga. Ry. Co. v. Moore,* 5 Ga. App. 562 (63 SE 642), where the court held that, if the plaintiff was injured by the wilful and wanton negligence of the defendant, he would be entitled to recover irrespective of whether he was guilty of contributory negligence or not. The majority failed to note the admonition which immediately followed that ruling, where Judge Powell, speaking for the court, said: "The court, in charging the jury upon the subject, should make it plain that it is never applicable unless the defendant's conduct was such as to evince a wilful intention to inflict the injury, or else was so reckless or so charged with indifference to the consequences, where human life or limb was involved, as to justify the jury in finding a wantonness equivalent in spirit to actual intent." The requested charge was incomplete and imperfect in that it failed to include such instructions.

The effect of the request to charge was to instruct the jury that, if they found the defendant guilty of the enumerated acts of negligence, that would constitute wilful and wanton negligence on his part and the negligence of plaintiff's son would not relieve the defendant of liability, whereas they should have been instructed that the rule would apply if the jury found a wilful intention on the part of the defendant to inflict the injury, or else the defendant was so reckless or so charged with indifference to the consequences as to justify a finding of wantonness equivalent in spirit to actual intent to inflict the injury. See *Western & Atlantic Ry. Co. v. Bailey,* 105 Ga. 100, 101 (31 SE 547); *Southern Ry. Co. v. Chatman,* 124 Ga. 1026, 1031 (53 SE 692, 6 LRA (NS) 283, 4 AC 675).

I am authorized to state that Justice Almand concurs in this dissent.

HEAD, Presiding Justice, concurring specially. I concur in the dissenting opinion of Mr. Justice Mobley, to the effect that the trial court did not err in refusing to charge the request as to wilful and wanton negligence. The request to charge was not a proper request, and it would have been reversible error, in my opinion, for the court to have charged the request in the language thereof.

I concur in the judgment of reversal, however, for an entirely different reason from that stated in the opinion of the majority. The plaintiff had pleaded, and the evidence amply authorized a finding, that, at the time of the collision in which the plaintiff's son was killed, the employee of the defendant company, John Albert Smith, was operating the truck of the defendant in violation of Rule 10 of the Public Service Commission, which provides as follows: "No driver shall go on duty while under the influence of, nor drink while on duty, any alcoholic beverage or liquor, whatever its alcoholic content, nor shall he knowingly be permitted to do so." In his charge to the jury the trial judge nowhere gave this rule, but charged that "The plaintiff contends that John Albert Smith, the driver of the Woodside truck violated the rule of the Georgia Public Service Commission with respect to drinking alcoholic beverages. If you find such alleged act has been proven by a preponderance of the evidence against John Albert Smith, then I charge you that this would be negligence per se; etc." This charge within itself was inadequate and incomplete, in that the rule of the Public Service Commission was not given in charge; and there was no proper guide for the jury in determining whether or not the rule had been violated, since, in the absence of proper instructions, the jury could have understood that, in order to violate the rule of the Public Service Commission, the drinking of alcoholic beverages would have to occur after the defendant's driver had entered upon his employment, and such is not the law.

The injury, however, was compounded by the subsequent charge of the court. The court further charged with reference to the consumption of alcoholic beverages by the defendant's driver,

and concluded this charge with the following language: "In other words, before any one would be entitled to recover against the defendant on the ground of driving under the influence, gentlemen, it would be necessary to show that he was less capable of operating a car than he would have been if he had not done the drinking." This charge is in direct conflict with the rule of the Public Service Commission. It had the effect in the present case of completely withdrawing from the jury Rule 10 of the Public Service Commission, and the jury was left without any proper guide as to when the rule of the Public Service Commission would apply and when the general rule of law of this State would apply. Jurors, however honest, intelligent, and capable, are not required, nor can they be expected, to select from contradictory charges that which should properly be applied under the facts of a given case. I therefore concur in the judgment of reversal, but not for the reason stated in the opinion of the majority.