## A99A2040. WALDO v. MOORE.
(527 SE2d 887)

McMURRAY, Presiding Judge.

Plaintiff Alice Waldo, a social guest in the home of defendant Margaree Moore, brought this tort action to recover for the second degree burns she sustained from scalding hot water in the shower. The trial court directed verdict in favor of defendant, and plaintiff appeals. *Held*:

---

Because the jury is authorized to conclude that Moore's intentional act of raising the water temperature coupled with her negligence in failing to alert her social guest to this fact after the guest announced her intention to bathe amounted to wilful and wanton behavior on Moore's part, we reverse the direction of the verdict.

> "When the defendant's wrongful act was not only a failure in diligence but was wilful or so grossly negligent as to be wanton and reckless, the mere failure of the plaintiff or his servant in the exercise of ordinary care will not defeat a recovery." [*Central R. &c. Co. v. Newman*, 94 Ga. 560, hn. 2 (21 SE 219).]

*Carr v. John J. Woodside Storage Co.*, 217 Ga. 438, 439 (1) (123 SE2d 261).

> If the negligence of the [defendant] is so gross as to amount to wanton and willful negligence [sic],[1] such want of ordinary care by the person injured or killed to avoid the consequences of it would be no bar to a recovery for the injury. *Central R. Co. v. Denson*, [84 Ga. 774 (11 SE 1039)] and *W. & A. R. Co. v. Bailey*, [105 Ga. 100 (31 SE 547)].

*Lowe v. Payne*, 156 Ga. 312, 315 (118 SE 924).

These Supreme Court of Georgia authorities have long been applied by this Court in tort actions occasioned on residential premises because they are in fact applications of the *identical legal duty of care* a homeowner owes a social guest (licensee) under OCGA § 51-3-2 (b), namely to refrain from inflicting "willful or wanton injury."

> To the licensee, [as well as] the trespasser, no duty arises of keeping the . . . premises up to any . . . standard of safety, *except* that they must not contain pitfalls, mantraps, and things of that type. *Mandeville Mills v. Dale*, 2 Ga. App. 607 [(58 SE 1060)]. See *Central of Ga. R. Co. v. Ledbetter*, 46 Ga. App. 500 (168 SE 81). . . .

(Emphasis supplied.) *MacKenna v. Jordan*, 123 Ga. App. 801, 802 (2) (182 SE2d 550).

In this case, the complaint alleges a violation of OCGA § 51-3-2

---

[1] We realize the language employed by the Supreme Court of Georgia is subject to the criticism that it is an oxymoron, "for wilfulness and wantonness are so far the opposites of negligence as to make the expression . . . misleading, though it is frequently employed by many of our best jurists and law-writers." *Central of Ga. R. Co. v. Moore*, 5 Ga. App. 562, 564 (2) (63 SE 642).

by defendant's knowing creation of a *hidden peril* by intentionally increasing the temperature of the hot water for residential use, namely to wash clothes, without informing plaintiff, her social guest. Viewed in the light most favorable to the plaintiff, this was admitted by defendant as she helped plaintiff from the bath. Plaintiff estimated she was hit by scalding water for 28 seconds, as a result of which her skin started coming off. Plaintiff's treating physician, Sanford Hawkins, testified that the maximum safe setting for bath water is 120 degrees Fahrenheit. Judging from the little time it took for plaintiff to sustain the blistering associated with second degree burning, Dr. Hawkins estimated that the water temperature at defendant's residence was "[g]reater than 131 [degrees] Fahrenheit." Plaintiff had previously bathed at defendant's residence without incident. And on the morning in question, plaintiff announced her intention to bathe to defendant, who failed to warn plaintiff that she had raised the water temperature. From the moment plaintiff first turned on the water, it felt "[v]ery hot." Plaintiff tried to "get it to turn off, but . . . [she] fell in the tub and . . . couldn't get up and [scalding water] kept pouring down on [her]." Whether the scalding water temperature in the shower constituted a hidden peril, mantrap, or pitfall is undoubtedly a question for jury determination. *MacKenna v. Jordan,* 123 Ga. App. at 802 (2), supra.

> Then the question [is], would the jury be *authorized* to find that [defendant's *intentional* conduct in increasing the water temperature combined with defendant's *negligent* omission in failing to mention this fact when her guest announced the intention to bathe, when viewed in the light most favorable to the nonmovant for directed verdict], amounted to wilful and wanton negligence [or conduct], for which the defendant is liable? We think this question should be answered in the affirmative.

(Emphasis supplied.) *Humphries v. Southern R. Co.*, 51 Ga. App. 585, 588 (181 SE 135). The dissent correctly states that the defendant host must exercise ordinary care to warn of a hidden peril. But the dissent errs in concluding that, as a matter of law applied to undisputed fact, plaintiff violated the common sense of mankind and failed to exercise such prudence as the ordinarily careful person would use in a like situation. Under the authority of *Robinson v. Kroger Co.*, 268 Ga. 735, 741 (1) (493 SE2d 403), that determination in this routine residential premises liability case is for the jury, and not this Court. The trial court erred in directing the verdict in this case.

*Judgment reversed. Pope, P. J., and Miller, J., concur. Smith, J., concurs in the judgment only. Johnson, C. J., Andrews, P. J., and Phipps, J., dissent.*

PHIPPS, Judge, dissenting.

Although a business invitee who sustains injury may impose liability on a premises owner based on negligence, OCGA § 51-3-1; *Jones v. Interstate North Assoc.*, 145 Ga. App. 366 (243 SE2d 737) (1978), a social guest or licensee may recover only for wilfulness or wantonness in causing the injury. OCGA § 51-3-2 (b); *Davis v. Scott*, 232 Ga. App. 493, 494 (502 SE2d 332) (1998). The concept of wilful and wanton negligence was rightfully disapproved in *Truelove v. Wilson*, 159 Ga. App. 906, 908 (4) (285 SE2d 556) (1981), and has received scant attention from the Supreme Court of Georgia ever since. The issue in this case is whether there is evidence to support a finding that homeowner Moore wilfully or wantonly injured her guest Waldo. In resolving this question, we ask two questions: What does the evidence show? What constitutes wilful or wanton injury?

The evidence shows that Waldo, who was 63 years old, spent the night at Moore's house. After breakfast the next morning, she announced that she was going to take a shower. She entered the shower, turned on the hot water knob, and allowed the water to begin flowing directly onto herself without testing it. Because Moore had raised the thermostat on her water heater earlier that morning in order to wash clothes, the water emerging from the shower spout was approximately 130 degrees Fahrenheit. Moore had not informed Waldo of the change in the temperature setting.

Waldo testified that she had visited Moore's home once before and had taken baths without incident. On this occasion, Waldo slipped and fell when the hot water began hitting her. She remained there until others in the house heard her cries for assistance and came to her rescue. Waldo presented no evidence showing that anyone in Moore's house had previously received burn injuries as a result of taking a bath or shower.

Waldo's attending physician, who is both trained and experienced in treating scald victims, testified that the maximum recommended safe temperature for bath water is 120 degrees Fahrenheit. He testified that this is also the maximum recommended safe temperature for setting residential water heaters, because children in the home cannot differentiate water temperature. But he acknowledged that residential water heaters can be set as high as 180 degrees Fahrenheit when the water is being used for purposes other than showering or bathing.

" 'Wilful conduct is based on an actual intent to do harm or inflict injury. . . .' " *Muller v. English*, 221 Ga. App. 672, 676 (2) (c) (472 SE2d 448) (1996). Because there is no claim that Moore intentionally injured Waldo, the question is whether there is evidence from which a jury could find that Moore's conduct amounted to the wanton infliction of injury. Wanton conduct has been described as " 'that which is

so reckless or so charged with indifference to the consequences as to be the equivalent in spirit to actual intent' [to do harm or inflict injury]. [Cit.]" Id. It is so egregious is nature that it authorizes the imposition of punitive damages, OCGA § 51-12-5.1, and deprives the defendant of the defense of contributory negligence. *Hopkins v. First Union Bank &c.*, 193 Ga. App. 109, 111 (2) (a) (387 SE2d 144) (1989).

The majority holds that a jury could find "that Moore's intentional act of raising the water temperature coupled with her negligence in failing to alert her social guest to this fact after the guest announced her intention to bathe amounted to wilful and wanton behavior on Moore's part. . . ." In my opinion, this analysis is fundamentally flawed. In determining whether a defendant's injury-causing conduct is wilful or wanton, we look to the defendant's state of mind as it relates to both the underlying conduct and the injury such conduct produces. The questions in this case are not whether Moore intentionally raised the water temperature on her thermostat or was negligent in failing to alert Waldo to this fact. The question is whether, by doing these things, Moore either intended to injure Waldo or acted with a recklessness equivalent in spirit to an actual intent to injure.

*Carr v. John J. Woodside Storage Co.*, 217 Ga. 438 (123 SE2d 261) (1961), and *Central R. & Banking Co. v. Denson*, 84 Ga. 774 (11 SE 1039) (1890), both cited in the majority opinion, are representative of cases involving such reckless conduct. In *Carr*, a drunk driver operated his vehicle at an excessive rate of speed and failed to slow down at an intersection although he noticed a warning sign. In *Denson*, plaintiff's decedent was a deaf man walking on a railroad track, and the railroad company's employees could have seen him for 400 yards before they reached him but gave no warning of the train's approach nor made any attempt to slow the train until it was within a few feet of the deceased. Interestingly, *Denson* also establishes that where a person present on a railroad track is an adult not known to be laboring under a mental or physical handicap, operators of a train are entitled to assume that he will take action to avoid injury. Liability for wantonness attaches only where the train operator makes no attempt to avoid injury even after this assumption proves unfounded.

The evidence shows without dispute that Waldo is a competent adult. Her own expert testified that residential water heaters should not be set above 120 degrees because of the possibility of injury to children. Even if Moore's failure to warn Waldo was an omission constituting negligence, there is simply an absence of evidence in this case sufficient to authorize a finding that her conduct rose to the level of wanton behavior.

The Georgia case which comes the closest to this case on its facts is *Sarno v. Hoffman*, 110 Ga. App. 164 (138 SE2d 96) (1964). There, a

motel guest was standing under a shower when the water suddenly and without warning became scalding hot. He charged the operators of the motel with negligence because, among other things, the water pressure was uneven and the temperature of the water was too high for bathing. For two reasons, *Sarno* presented a much stronger case for liability than does this case. First, the motel owed its guest a duty to avoid injuring him through negligence. Second, the guest could not have done anything to avoid being scalded by the water. Yet, it took a divided court to allow even the plaintiff in *Sarno* to proceed to a jury on a negligence theory.

*Robinson v. Kroger Co.*, 268 Ga. 735 (493 SE2d 403) (1997), does not require us to reverse the trial court's grant of Moore's motion for directed verdict. *Robinson* is primarily concerned with the routine adjudication of negligence issues. The question here is whether there is evidence of wilfulness or wantonness. *Alterman Foods v. Ligon*, 246 Ga. 620 (272 SE2d 327) (1980), was decided because summary judgment on negligence issues in slip and fall cases was being granted too infrequently. Because the pendulum had swung too far in the opposite direction, *Robinson* was decided. Yet *Robinson* recognizes that there are cases in which it can be held that, as a matter of law, an invitee failed to exercise ordinary care for personal safety. In my opinion, a competent adult who enters a shower, turns the hot water knob, and allows the water to begin flowing directly onto herself without testing it has, as a matter of law, failed to exercise ordinary care for her own safety. In refusing to so hold, the majority, rather than complying with *Robinson*, is swinging the pendulum back to the pre-*Alterman Foods* era. I respectfully dissent.

I am authorized to state that Chief Judge Johnson and Presiding Judge Andrews join in this dissent.

DECIDED JANUARY 12, 2000 —

*David E. Tuszynski*, for appellant.

*Hull, Towill, Norman, Barrett & Salley, Floyd M. Taylor*, for appellee.